In re Thomas James DYER, Debtor.

Nancy Knupfer, Trustee, Appellant,

v.

John Lindblade, Appellee.

In re Thomas James Dyer, Debtor,

John Lindblade, Appellant,

v.

Nancy Knupfer, Trustee, Appellee.

Nos. 01–56319, 01–56384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed March 13, 2003.

Sharon Z. Weiss and Deborah H. Eisen, Weinstein, Eisen & Weiss, Los Angeles, CA, for the Appellant and Cross-Appellee.

Patricia A. Teunisse, Carole M. Pitre, Pitre & Teunisse, San Dimas, CA, for the Appellee and Cross-Appellant.

Before CANBY, JR., GOULD and BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge:

This case presents an important bankruptcy law question of first impression in this circuit: Does the sanction authority granted to bankruptcy courts under 11 U.S.C. § 105(a) permit punitive sanctions? Before reaching that question, we address several other issues arising from the bankruptcy proceedings of Thomas Dyer ("Dyer"), the ex-husband of Jeanie Lindblade ("Jeanie").

Dyer and Jeanie owned a house together when they were married ("the home"). Jeanie's father, John Lindblade ("Mr. Lindblade"), claims to hold a lien on the home. Mr. Lindblade maintains that he lent funds to the couple to enable them to buy the home and secured the debt by a deed of trust executed in 1992. The deed of trust, however, was not recorded until May 11, 1998, several weeks after Dyer filed for bankruptcy, listing the home as one of his assets.

The bankruptcy court determined that the deed of trust was unenforceable because the underlying debt secured was nonexistent. The funds Mr. Lindblade advanced, held the bankruptcy court, were not a loan at all, but instead were a gift to Dyer and his then-wife Jeanie. We conclude that this finding of the bankruptcy court is clearly erroneous, so we reverse on the loan/gift issue.

The bankruptcy court also determined that Mr. Lindblade's post-petition recordation of the deed of trust violated the automatic stay provision of 11 U.S.C. § 362 and was therefore void. As the bankruptcy court recognized, that determination renders Mr. Lindblade's deed of trust unperfected, but does not necessarily make it unenforceable. The bankruptcy court went on to determine that the Trustee could not avoid the unperfected security interest under 11 U.S.C. § 544(a)(3). The Trustee does not challenge that finding before this court, so we do not revisit the issue.

Finally, the bankruptcy court concluded that Mr. Lindblade's violation of the automatic stay provision was willful and in bad faith, and that the Trustee was therefore entitled to compensatory and punitive sanctions and attorneys' fees resulting from the violation. We conclude that significant punitive sanctions are not available under either the civil contempt authority of 11 U.S.C. § 105(a) or the bankruptcy court's inherent sanction authority. We therefore affirm the district court's decision to remand the case to the bankruptcy court for a determination of the Trustee's attorneys' fees and compensatory damages.

## BACKGROUND

### A. The Loan and Deed of Trust

This appeal and cross-appeal arise from the bankruptcy proceeding Dyer initiated in 1998, but the story underlying it begins in 1992. In that year, Mr. Lindblade de-

cided to assist his daughter and her husband in buying a house. (Mr. Lindblade's generosity was possible because he was a $22,000,000 jackpot winner in the California lottery.) To implement his parental beneficence, Mr. Lindblade gave approximately $143,000 to Jeanie and her then-husband, Dyer, for a downpayment for the home.

As additional financing for the purchase of the home, Dyer and Jeanie also took out a $100,000 mortgage from First Interstate Mortgage Company, secured by a first deed of trust. On the loan application, both Dyer and Jeanie stated under penalty of perjury that they had not borrowed any portion of the down payment for the home.

In June 1992, approximately two months after obtaining the First Interstate loan and moving into the home, Jeanie and Dyer executed a promissory note and deed of trust in favor of Mr. Lindblade, stating that they owed Mr. Lindblade $143,000. Although the promissory note does not set a repayment date or interest rate, it gives Mr. Lindblade the right to demand payment in the event Dyer and Jeanie divorce or Jeanie dies.

At Mr. Lindblade's insistence, the deed of trust was notarized. For several years, however, the deed remained unrecorded. Mr. Lindblade indicated that he was aware of the recordation requirement but never recorded the deed because he believed that Dyer had done so.

In 1995, Mr. Lindblade paid off the balance of Jeanie and Dyer's First Interstate loan, in the amount of $97,782.33. Mr. Lindblade asserts that he intended for this second payment to be a loan with terms identical to those pertaining to the $143,000 loan and contained in the June 1992 deed of trust. No written agreement to that effect was ever executed.

Dyer and Jeanie, while married, made no payments on either the $143,000 loan or the $97,782.33 loan. Instead, in 1997,

Dyer and Jeanie refinanced the home once again. On their loan application, Dyer and Jeanie represented for a second time that there were no outstanding loans on the property. After the divorce, Jeanie did pay a small amount of money as repayment of the loan (approximately $2,000).

## B. The Dyer Lindblade Divorce and Dyer Bankruptcy

In March 1998, Dyer filed for divorce from Jeanie. Soon thereafter he filed for bankruptcy. In his original bankruptcy schedules, Dyer did not record any debt owed to Mr. Lindblade.

Attorney Patricia Teunisse ("Teunisse") represented Jeanie in the divorce proceedings. She also represented Mr. Lindblade regarding his claim to a lien secured by the home. On April 28, 1999, Teunisse handed the deed of trust to an associate in her office and asked that the deed be recorded. The deed was not immediately recorded.

Teunisse asserts that when she initiated the recordation process, she was not yet aware of Dyer's bankruptcy. She became aware of the bankruptcy filing, however, the next day, when Dyer, Jeanie, Teunisse, and Mr. and Mrs. Lindblade all attended a property settlement negotiation regarding the Dyer–Lindblade divorce.

After learning of the bankruptcy proceedings, neither Teunisse nor Mr. Lindblade attempted to halt the recordation of the deed of trust. Instead, on May 1, 1998, Teunisse sent a letter to Dyer's bankruptcy counsel, stating:

> The $143,000.00 initial down payment was secured by a promissory note and a deed of trust. A copy of each follows this letter. As I indicated to you over the telephone, the Lindblades were under the impression that Mr. Dyer had done everything necessary to secure their interest against the home. They

did not understand that their trust deed had not been recorded. We are ensuring the recordation of the same.

Please notify the trustee of our position ... I am not sure what action we will take yet to clear the title to the property but some action will be taken shortly.

The deed was recorded on May 11, 1998. Subsequently, in June 1998, Dyer amended his bankruptcy schedule to indicate that Mr. Lindblade had a second deed of trust on the home.

### C. The Present Litigation

After Mr. Lindblade recorded the deed of trust, the Trustee of Dyer's estate ("the Trustee") notified Mr. Lindblade that the recordation violated the automatic stay provisions of 11 U.S.C. § 362, designed to give "the debtor a breathing spell from his [or her] creditors." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992) (quoting H.R.Rep. No. 95–595 at 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97). Section 362,[1] "stops all collection efforts, all harassment, and all foreclosure actions." *Id.* (emphasis removed). The parties agree that the post-petition recordation of the deed of trust violated § 362.

After Mr. Lindblade refused the Trustee's request to reconvey the deed of trust, the Trustee initiated an adversary action against Mr. Lindblade. The complaint sought a declaration that Mr. Lindblade had violated the automatic stay provision and that the post-petition recordation was therefore void. As part of this litigation, the Trustee also asked the bankruptcy court to declare that Mr. Lindblade's deed of trust was unenforceable against Dyer's estate. Two independent reasons were advanced in support of that request: First, the Trustee argued that the deed of trust was unperfected (because the post-petition recordation was void), and that the Trustee could therefore avoid the deed of trust under § 544(a)(3), which allows the Trustee to avoid unperfected liens in certain circumstances.[2] Second, the Trustee asserted that the deed of trust was invalid because the debt which it secured was illusory. The Trustee argued that the funds Mr. Lindblade advanced were intended as a gift, rather than a loan, so there was no debt. The Trustee also urged the bankruptcy court to find that Mr. Lindblade's automatic stay violation was willful, entitling the Trustee, under the sanctioning authority of § 105(a), to damages and attorneys' fees incurred as a result of the automatic stay violation.[3]

Mr. Lindblade admitted that he had violated the automatic stay provisions, but continued to press, for a time, the theory that the post-petition recordation should

---

1. All further citations are to 11 U.S.C. unless otherwise indicated.

2. Section 544(a)(3) provides:

 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 ... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

3. Section 105(a) provides:
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

be validated.[4] He contested each of the Trustee's additional claims and arguments.

In its first ruling, the bankruptcy court entered a judgment indicating that Mr. Lindblade had violated the automatic stay provision and that the post-petition recordation was therefore void. The bankruptcy court further held that the Trustee was not entitled under § 544(a)(3) to avoid the lien.[5] But the bankruptcy court did accept the Trustee's alternate theory: The court held that the lien was invalid because the funds Mr. Lindblade advanced were actually a gift, not a loan. Finally, the bankruptcy court held that Mr. Lindblade had willfully violated the automatic stay and that a sanction award was therefore appropriate, but postponed any decision regarding the amount of sanctions to be awarded.

In a later order, the bankruptcy court awarded the Trustee a total of $201,439 as a result of the stay violation. First, the bankruptcy court awarded $151,439, measured by the amount of the Trustee's documented attorneys' fees and costs. This amount was awarded "in the alternative" as either "sanctions," "attorneys' fees," or "punitive damages." The bankruptcy court also awarded an additional $50,000 in "punitive damages."

Mr. Lindblade objected, arguing both that the fees were unreasonable for the work done and that most of the fees were spent litigating issues that did not flow from the stay violation. In response to these objections, the bankruptcy court stated:

> With regard to the reasonableness or not of the attorneys' fees, that's precisely the reason I have granted this award

in the alternative both as fees and costs and as a portion of a punitive damages award. As mentioned, had I not granted all of the fees and costs incurred by or on behalf of the Trustee, the punitive damage award would have been significantly higher than it was.

Mr. Lindblade appealed the sanction award to the district court on the ground that it was excessive. That appeal was consolidated with two pending appeals from the earlier order.

The district court affirmed the bankruptcy court's ruling that the $143,000 payment from Mr. Lindblade was a gift rather than a loan and its finding that Mr. Lindblade willfully violated the stay. The district court reversed and remanded, however, on the issue of the bankruptcy court's sanction order.

First, the district court concluded that the $151,439 overstated the fees incurred by the Trustee as a result of the violation, because a substantial portion of those fees were spent litigating issues unrelated to the violation. The district court further concluded that punitive damages are not available on these facts because Mr. Lindblade's violation, though willful, was not malicious, wanton or oppressive. Alternatively, the district court held that punitive damages were unavailable because the Trustee did not prove actual damages; this ruling assumed that attorneys' fees are not counted as "actual damages." Finally, in a somewhat confusing ruling, the district court stated that although "punitive damages" are unavailable, the bankruptcy court may have the authority to award "sanctions" in addition to any attor-

---

4. Mr. Lindblade took the position that post-petition recordations are "voidable" but not automatically "void."

5. In essence, the bankruptcy court held that certain peculiarities in Dyer's bankruptcy petition would have put a *bona fide* purchaser

on notice of the Lindblade deed of trust (even if Mr. Lindblade had not recorded the deed of trust). Therefore, § 544(a)(3) did not apply. Because that ruling is not before us, we neither detail the bankruptcy court's reasoning nor comment on its propriety.

neys' fees incurred because of the automatic stay violation.

■ This court is in as good a position as the district court to review the findings of the bankruptcy court. We therefore independently review the bankruptcy court's decision. *Atalanta Corp. v. Allen, (In re Allen)*, 300 F.3d 1055, 1058 (9th Cir.2002). We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## JURISDICTION

■ Before proceeding to the merits, we must examine our subject matter jurisdiction. *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 903 (9th Cir.1993), *dismissed on other grounds*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). We have jurisdiction only if both the bankruptcy court's order and the district court's order are final. 28 U.S.C. 158(d); *Bonner Mall*, 2 F.3d at 903.

■ The district court remanded the sanctions issue to the bankruptcy court for further fact-finding. Where fact-finding remains to be done we ordinarily, outside the bankruptcy context, lack jurisdiction. *See Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.*, 873 F.2d 1327, 1329 (9th Cir.1989). Finality determinations in bankruptcy cases, however, are far from straightforward. Applying the prag-

matic approach to finality employed in the bankruptcy context we conclude that we do have jurisdiction in the unique circumstances of this case. *See Scovis v. Henrichsen (In re Scovis )*, 249 F.3d 975, 980 (9th Cir.2001); *Bonner Mall*, 2 F.3d at 903.

■ We note, first, that any lack of finality with respect to the sanction issue would not defeat our jurisdiction over the merits (*e.g.*, the enforceability of the deed of trust), even in a non-bankruptcy case. In *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), the Supreme Court held that a decision on the merits was "a 'final decision' for purposes of [28 U.S.C.] § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." Applying the "bright-line" rule adopted by the Court, *id.* at 202, 108 S.Ct. 1717, we have held that unresolved issues related to attorneys' fees do not defeat finality, regardless of whether the attorneys' fees are available under a statute,[6] by contract,[7] or as a sanction for bad faith litigation.[8] Other circuits have similarly concluded, relying on *Budinich*, that an appeal is final despite unresolved issues relating to sanctions.[9] Like an award of attorneys' fees or the imposition of sanctions in non-bankruptcy cases, the award of sanctions under § 105(a) is separate from the merits. Lack of finality with respect to that issue, therefore, does not defeat our jurisdiction over the merits.[10]

---

**6.** *Historical Research v. Cabral*, 80 F.3d 377, 379 (9th Cir.1996).

**7.** *United States ex rel Familian Northwest v. RG & B Contractors, Inc.*, 21 F.3d 952, 954–56 (9th Cir.1994).

**8.** *Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir.1999).

**9.** *See, e.g., Brown v. Francis*, 75 F.3d 860, 864 n. 3 (3d Cir.1996) (sanctions under Fed. R.Civ.P. 11); *Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir.1989) (same); *Turnbull v. Wilcken*, 893 F.2d 256, 257 (10th Cir.1990)

(sanctions under inherent powers or Fed. R.Civ.P. 16(f), 37(b)(2) or 41(b)); *cf. Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1282 (11th Cir.2002) (treating appeal from denial of motion to hold party in contempt and for sanctions as a separate but consolidated appeal).

**10.** A different situation might be presented if an individual attempted to recover damages for an automatic stay violation under § 362(h). *See, e.g., Brown v. Penn. State Employees Credit Union (In re Brown)*, 803 F.2d 120, 121–23 (3d Cir.1986) (order establishing liability under § 362(h) but not quantifying

The harder question is whether we also have jurisdiction over the sanction order. Under the flexible finality standards applicable to bankruptcy appeals, we consider four factors in determining whether a district court's remand order is final: (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm. *Scovis*, 249 F.3d at 980 (citing *Lundell v. Anchor Constr. Specialists (In re Lundell)*, 223 F.3d 1035, 1038 (9th Cir.2000)).

Applying these standards, we have consistently recognized that when an appeal involves a legal question independent of the fact-finding required by the remand order, so that an immediate appeal "could dispose of the case or proceedings and obviate the need for fact-finding," the competing considerations usually tip in favor of immediate review. *See Scovis*, 249 F.3d at 980; *Lundell* 223 F.3d at 1038. This so-called *Bonner Mall* exception derives from the case bearing that name. *See Bonner Mall*, 2 F.3d at 904.

This case fits neatly within the *Bonner Mall* exception. The primary thrust of the Trustee's argument on appeal is that the entire sanction award could be upheld as *punitive* sanctions, even if the district court was correct in ruling that the bankruptcy court's award of attorneys' fees was unreasonably high. Whether such punitive sanctions are available at all is a legal question entirely independent of the amount of any attorneys' fees, sanctions or punitive damages. Only the amount issue was remanded to the bankruptcy court. Our deciding the legal issue regarding the availability of punitive sanctions could eliminate the need for further fact-finding.

As it turns out, we do not obviate the need for remand, because we reject the Trustee's theory. But the propriety of appellate review does not turn on our view of the merits. A case may be final "where a decision in favor of one of the parties as to a central legal issue in the case would eliminate the necessity of factual findings on remand, regardless of our eventual ruling." *Id.* at 904 n. 13.

The considerations counseling in favor of immediate review are even stronger in this case than in the typical *Bonner Mall* situation. We are compelled by the principles of *Budinich* to consider the merits issues now. Delaying review of the sanctions order would result in piecemeal litigation. Even in non-bankruptcy cases, the Seventh Circuit has chosen to exercise pendent appellate jurisdiction over non-final fee issues when the merits of the case are properly appealable. *Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 123 F.3d 616, 622–23 (7th Cir.1997). That decision is

---

damages was not final); *Calcasieu Marine Nat'l Bank v. Morrell (In re Morrell)*, 880 F.2d 855, 856–57 (5th Cir.1989) (same).

As we will develop more fully, however, the Trustee is not entitled to bring a damages action under § 362(h) and is therefore limited to the sanctions available under § 105(a). Although the former is a private cause of action allowing for a recovery of damages (including punitive damages), the latter is a sanction authority only and, as such, controlled by the principles of *Budinich*. *Cf. Atlas v. Dzikowski (In re Atlas)*, 210 F.3d 1305, 1307–08 (11th Cir.2000) (holding that § 362(h) falls outside

"the parameters of *Budinich*," because § 362(h) authorizes "an award of *damages*, not just attorney's fees,"—a distinction which is "crucial to [the] analysis.") (emphasis in original).

To the extent this distinction exalts form over substance, we note that the Supreme Court has encouraged such line-drawing: "[W]hat is of importance here is not preservation of conceptual consistency ... but rather preservation of operational consistency and predictability in the overall application of [28 U.S.C.] § 1291." *Budinich*, 486 U.S. at 202, 108 S.Ct. 1717.

controversial, *see id.* at 622 n. 2 (noting conflicting authorities), and we stop short of adopting a similar rule in non-bankruptcy cases. But where, as here, the sanctions issue meets the *Bonner Mall* exception *and* we are compelled to hear the non-sanctions issues now, the opportunity to avoid piecemeal litigation weighs heavily in favor of our jurisdiction.

## DISCUSSION

### A. Validity of the Unrecorded Deed of Trust

█ All parties agree that Mr. Lindblade's attempt to record the deed of trust violated the automatic stay provisions of § 362. The May 1998 recordation was therefore void. *Schwartz*, 954 F.2d at 571.

Normally, the Trustee of a bankruptcy estate is entitled to avoid such unrecorded (and therefore unperfected) security interests. *See, e.g.,* § 544(a)(3). On the basis of facts peculiar to this case, however, the bankruptcy court determined that § 544(a)(3) does not apply, a holding we do not revisit here as it has not been appealed.

The bankruptcy court determined, however, that Mr. Lindblade's deed of trust was unenforceable for a different reason: Mr. Lindblade's $143,000 payment, held the bankruptcy court, was a gift, rather than a loan, and so was unenforceable. *See Trowbridge v. Love*, 58 Cal.App.2d 746, 137 P.2d 890, 893 (1943) (when a debt is extinguished, the underlying deed of trust is unenforceable); Cal. Civil Code § 2909. That finding was clearly erroneous.

█ The parties agree that, under California law, six factors determine whether a transaction is a gift: (1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual or symbolic; (4) acceptance, either actual or imputed; (5) complete divestment of all control by the donor; and (6) lack of con-

sideration for the gift. *United States v. Alcaraz–Garcia*, 79 F.3d 769, 775 (9th Cir. 1996); *Yamaha Corp. v. State Bd. of Equalization*, 73 Cal.App.4th 338, 86 Cal. Rptr.2d 362, 375 (1999). Among these factors the donor's intent is key. *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 740 (9th Cir.1991). Whether a transaction is a gift is a question of fact to be determined from all the evidence. *Yamaha*, 86 Cal.Rptr.2d at 376. We review that factual finding for clear error. *In re Allen*, 300 F.3d at 1058.

█ Mr. Lindblade argues that the Trustee has failed to establish two of the requisite elements, namely a voluntary intent on the part of the donor to make a gift and complete divestment of all control by the donor. These two factors largely overlap: The deed of trust, it is true, did not divest Mr. Lindblade of all control of the $143,000, because Mr. Lindblade could demand repayment in certain circumstances. But this contingent interest does not necessarily defeat the finding that the transaction was a gift: "The mere retention by the donor of some indicia of control over a gift, standing alone and without any evidence concerning the intent behind such retention of control, is a neutral factor …" *Yamaha*, 86 Cal. Rptr. 2d at 376*See also Gordon v. Barr*, 13 Cal.2d 596, 91 P.2d 101, 104 (1939) (collecting cases in which contingent interest, including the right of revocation, did not invalidate gifts).

The answer to the gift/loan question thus hinges on whether the Trustee "unequivocally" established Mr. Lindblade's intent to donate despite his retention of a contingent interest. *See Yamaha*, 86 Cal. Rptr.2d 362. The Trustee has not.

█ The existence of a signed and notarized loan document and deed of trust, both insisted upon by Mr. Lindblade and created only after considerable effort on his part, is powerful evidence that Mr. Lindblade intended the transaction to be a

loan. *See Ceguerra*, 933 F.2d at 738–39. The absence of certain common loan features, such as a repayment schedule or provision for interest, does not, without more, transform an otherwise valid loan into a gift. *Id.*

Moreover, none of the other circumstantial evidence relied upon by the bankruptcy court establishes that Mr. Lindblade relinquished his rights under the deed of trust. In particular, the Dyers' representations to third-party lenders that the transaction was not a loan were uniformly self-serving. The existence of a loan could have defeated their efforts to obtain additional financing.

We conclude that the circumstantial evidence was not sufficient to overcome the strong presumption created by the existence of a facially-valid loan agreement and deed of trust. We hold, therefore, that the deed of trust is enforceable against the Dyer bankruptcy estate.

We do not reach the question whether the $97,782.33 payment of the First Interstate Mortgage was also a gift. Mr. Lindblade originally requested that the bankruptcy court find that he also had an equitable mortgage based on that payment. We do not understand Mr. Lindblade to press the equitable mortgage argument before this court and therefore do not consider it.[11]

**B. Damages/Sanctions Resulting from the Automatic Stay Violation**

Although Mr. Lindblade is entitled to enforce his unperfected deed of trust despite the automatic stay violation, the Trustee may nonetheless be entitled to sanctions.

**1. Damages under § 362(h)**

Under § 362(h), an individual harmed by a willful automatic stay violation is entitled to collect compensatory damages (including attorneys' fees) and, where appropriate, punitive damages.[12] The parties all agree, however, that the Trustee is ineligible to receive damages under that private cause of action, because she is not an "individual." *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192 (9th Cir.1995).

**2. Bankruptcy Court's Contempt Authority**

■ Nonetheless, we have held that the Trustee may be entitled to recovery for violation of the automatic stay "under section 105(a) as a sanction for ordinary civil contempt." *Id.* at 193; *accord Calif. Employment Dev. Dep't v. Taxel (In re Del Mission)*, 98 F.3d 1147, 1152 (9th Cir. 1996). Although the availability of civil contempt sanctions under § 105(a) has a checkered past in our circuit,[13] the recent precedent makes clear that this remedy is

---

**11.** If we were to consider the question, we would likely find that the bankruptcy court did not clearly err in holding that the $97,782.33 payment was a gift. There is no documentary evidence at all suggesting that this second transaction was a loan. As we rely most heavily on the documentary evidence in concluding that the original $143,000 transaction was a loan, in the absence of such evidence we could not say that the bankruptcy court clearly erred in determining that the $97,782.33 payment was a gift.

**12.** Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**13.** At one time, this circuit held that § 105(a) did *not* authorize civil contempt sanctions. *Plastiras v. Idell (In re Sequoia Auto Brokers)*, 827 F.2d 1281, 1284–85 (9th Cir.1987). Subsequently, however, we reached the opposite conclusion. In *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir.1993) we held, without citing *Sequoia*, that § 105(a) authorizes civil contempt damages for an automatic stay violation. On this point, *Goodman's* holding has been followed—*see, e.g., Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir.2002);

available. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir.2002); *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir.2002).

Because the Trustee recovers under the contempt authority of § 105(a), rather than under § 362(h), however, the sanction award must conform to the legal standards governing that authority. *Walls*, 276 F.3d at 507. We have implied, in passing, that the contempt remedy is nearly identical to the remedy available to an individual under § 362(h), except for the permissive nature of the contempt authority. *Del Mission*, 98 F.3d at 1152. But careful reflection reveals important distinctions between § 105(a) and § 362(h), including, as we will develop, different availability of punitive damages.

*Walls* made clear that § 105(a), as a discrete statutory provision with its own standards and limitations, is simply not a vehicle for enforcing other provisions of the bankruptcy code. In *Walls*, Wells Fargo Bank attempted to collect a prebankruptcy debt from Marie Walls, in violation of the automatic discharge injunction created by § 524(a)(2). The debtor brought a class action suit against Wells Fargo on behalf of herself and similarly situated debtors. The district court dismissed the suit, concluding that Walls' only remedy was a civil contempt proceeding in bankruptcy court under § 105(a).

We affirmed. Noting that "it is not up to us to read other remedies into the care-

fully articulated set of rights and remedies set out in the Bankruptcy Code," we rejected Walls' invitation to read § 105(a) as a catch-all private right of action for the enforcement of other Bankruptcy Code provisions. *Walls*, 276 F.3d at 507. We further noted that "in any event, § 105(a) authorizes only such remedies as are necessary and appropriate to carry out the provisions of [the Bankruptcy Title]." *Id.* (internal quotation marks and citation omitted). Because the remedies traditionally associated with "compensatory civil contempt" are adequate to meet the goal of § 105(a), we concluded "no further remedy is necessary." *Id.*

■ So here: Congress chose to exclude the Trustee from the reach of § 362(h). The Trustee therefore has no private right of action for damages resulting from automatic stay violations. We will not strain the language of § 105(a) in a misguided attempt to accomplish by judicial fiat that which Congress chose not to do. Rather, the Trustee, like the debtor in *Walls*, is limited to the civil contempt remedy provided by § 105(a).[14] We must therefore analyze the current contempt sanctions in this case under the legal standards associated with civil contempt awards.

### (a) The Imposition of Sanctions

■ "The standard for finding a party in civil contempt is well settled: The

---

*Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir.2002); *Del Mission*, 98 F.3d at 1152–53; *Pace*, 67 F.3d at 193–94—while *Sequoia's* holding was overruled by *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284–85 (9th Cir.1996). Although the reasoning of *Rainbow Magazine* relied heavily upon a now-repealed bankruptcy provision, *id.* at 284, its holding regarding the availability of civil contempt in bankruptcy continued to be followed and became the settled law of the circuit.

14. In extreme cases, where conduct rises to the level of "bad faith," the bankruptcy court may also impose sanctions under its inherent sanction authority. *Rainbow Magazine*, 77 F.3d at 284. As we later explain, however, the issues which prevent us from affirming the current sanctions award under the bankruptcy court's civil contempt authority also preclude us from upholding that award under the bankruptcy court's inherent sanction authority.

moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Bennett*, 298 F.3d at 1069. Because the "metes and bounds of the automatic stay are provided by statute and systematically applied to all cases," *Jove Eng'g v. IRS (In re Jove Eng'g)*, 92 F.3d 1539, 1546 (11th Cir.1996), there can be no doubt that the automatic stay qualifies as a specific and definite court order.

In determining whether the contemnor violated the stay, the focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir.1996) (internal citations omitted); *accord McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) (Because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act.").

The threshold standard for imposing a civil contempt sanction in the context of an automatic stay violation therefore dovetails with the threshold standard for awarding damages under § 362(h). *Pace*, 67 F.3d at 191 (incorporating the willfulness standard of § 362(h) as explicated by *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir.1992)). Under both statutes, the threshold question regarding the propriety of an award turns not on a finding of "bad faith" or subjective intent, but rather on a finding of "willfulness," where willfulness has a particularized meaning in this context:

> "[W]illful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*Pace*, 67 F.3d at 191; *see also Pinkstaff*, 974 F.2d at 115; *Hardy*, 97 F.3d at 1390; *cf. Bennett*, 298 F.3d at 1069 (describing standard for imposing civil contempt sanctions under § 105(a) for violation of discharge injunction). We review the decision to impose contempt for an abuse of discretion, and underlying factual findings for clear error. *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir.1999).

Applying those standards, we cannot conclude that the bankruptcy court abused its discretion in determining that Mr. Lindblade's post-petition recordation of his deed of trust was worthy of sanction. Mr. Lindblade recorded his deed of trust on May 11, 1998, several weeks after learning of the bankruptcy filing. He argues that this post-petition recordation was inadvertent because neither he nor his attorney Teunisse was aware of the bankruptcy when they instigated the recordation. This explanation rings hollow, however, in light of the May 1, 1998 letter from Teunisse to Dyer's counsel, indicating an affirmative intent to proceed with the recordation despite knowledge of the bankruptcy filing.

Less clear, however, is whether either Teunisse or Mr. Lindblade was aware of the automatic stay injunction at the time of the recordation. They may not have been familiar with that particular Code provision. In the context of awarding damages under § 362(h), we have stated that a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay. *Pinkstaff*, 974 F.2d at 115 (citing *Carroll v. Tri–Growth Ctr. City, Ltd. (In re Carroll)*, 903 F.2d 1266, 1272 (9th Cir.1990)). While that holding may be consistent with the congressional intent behind § 362(h), we hesitate to extend that principle to the contempt context. Generally, a party cannot be held in contempt for violating an injunction absent knowl-

edge of that injunction. *Bennett*, 298 F.3d at 1069 (before sanctions can be imposed for violation of § 524 injunction, a creditor must know that the discharge injunction is applicable); *Jove*, 92 F.3d at 1555 (contempt appropriate only if party has knowledge of the automatic stay); *cf.* Fed. R.Civ.P. 65(d) (injunction not binding unless party has actual knowledge of it).

But the district court's contempt sanction can be upheld on an alternative ground: Mr. Lindblade had an affirmative duty to remedy his automatic stay violation. *Del Mission*, 98 F.3d at 1151. Despite letters from the Trustee notifying Mr. Lindblade and Teunisse that the post-petition recordation violated the automatic stay, neither attempted to cure the defect, such as by attempting to undo the recordation process. Nor has Mr. Lindblade demonstrated that such attempts would have been futile. To the contrary, Mr. Linblade continued to press, for a time, his theory that the post-petition recordation, though technically a violation of the automatic stay, should not be rendered void. Rather than take that litigation position, Mr. Lindblade should have conceded the invalidity of the recordation and petitioned for relief from the automatic stay. In all, we cannot say that the bankruptcy court abused its discretion in determining that Mr. Lindblade willfully violated the automatic stay.

**(b) Punitive Sanctions under the Bankruptcy Court's Contempt Authority**

 Viewing the bankruptcy court award through the lens of its contempt authority we must, however, reject the Trustees' principal argument on appeal—that the entire award can be sustained as punitive sanctions.

As both *Walls* and *Pace* emphasize, the contempt authority conferred on bankruptcy courts under § 105(a) is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies.

We recently explained the difference between civil sanctions and criminal sanctions: Civil penalties must either be compensatory or designed to coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–38 (9th Cir.2001). In contrast, "a flat unconditional fine totaling even as little as $50" could be criminal "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance," and the fine is not compensatory. *Id.* at 1138 (citation omitted). *See also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–34, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). This is so regardless of whether the non-compensatory fine is payable to the court or to the complainant. *Hanshaw*, 244 F.3d at 1138 n. 7. Whether the fine is payable to the complainant may, however, be one relevant factor in determining whether the fine is compensatory or punitive. *Id.*

The sanction award assessed against Mr. Lindblade, if considered without regard to the propriety of the compensatory award as the Trustee suggests, was neither intended to coerce compliance nor intended to compensate the Trustee for actual damages. It was therefore a criminal contempt sanction.

We have never authorized punitive (*i.e.* criminal) sanctions under the contempt authority of § 105(a). In *Del Mission* we did state in dicta that "[t]he only meaningful difference between awarding damages under § 362(h), as opposed to § 105(a), is that relief under § 362(h) is mandatory, while relief under § 105(a) is discretionary." 98 F.3d at 1152–53. Interpreted broadly, that statement could imply that because punitive damages are available under § 362(h), punitive sanctions must be similarly available under § 105(a).

On close inspection, however, we are convinced otherwise. In both *Del Mission*

and the case on which *Del Mission* relied (*Pace* ), the bankruptcy court had awarded only compensatory sanctions, in the form of costs and attorneys' fees. Those cases, therefore, could not and did not consider the availability of punitive sanctions under § 105(a). Moreover, because punitive sanctions are criminal contempt sanctions, we very much doubt that *Del Mission* decided both implicitly and unnecessarily a difficult issue which has engendered as much debate among our sister circuits as has a bankruptcy court's ability to adjudicate and punish criminal contempt.[15]

Reaching the issue as one of first impression, we conclude that criminal contempt sanctions are not available under § 105(a). Section 105(a) contains no explicit grant of authority to award punitive damages. Rather, the language of § 105(a) authorizes only those remedies "necessary" to enforce the bankruptcy code. *Walls*, 276 F.3d at 507. The sanctions associated with civil contempt—that is, compensatory damages, attorney fees, and the offending creditor's compliance—

adequately meet that goal, *id.* at 507, rendering serious punitive sanctions unnecessary. *See also Sosne v. Reinert & Duree (In re Just Brakes Corp. Sys.)*, 108 F.3d 881, 885 (8th Cir.1997) (holding that "the power to punish" through punitive sanctions extends beyond the remedial goals of § 105(a)); *Griffith v. Oles (In re Hipp* ), 895 F.2d 1503, 1515–16 (5th Cir.1990) (same).

Although "relatively mild" non-compensatory fines may be necessary under some circumstances, *Zambrano v. Tustin,* 885 F.2d 1473, 1479 (9th Cir.1989); *Hanshaw,* 244 F.3d. at 1140 n. 10, the language of § 105(a) simply does not allow for the serious punitive penalties here assessed (a minimum of $50,000 and, under the trustee's theory, over $200,000). As we did in *Hanshaw,* we leave for another day the development of a precise definition of the term "serious" punitive (criminal) sanctions. *Id.* (citing cases and implying that any fine above $5,000, "at least in 1998 dollars," would be serious, but declining to reach the question).[16] Our interpretation

---

**15.** For circuits holding that a bankruptcy court does not have the power to impose criminal (punitive) sanctions, see *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube* ), 108 F.3d 609, 613 n. 3 (5th Cir.1997); *Sosne v. Reinert Duree (In re Just Brakes Corp. Sys.),* 108 F.3d 881, 885 (8th Cir.1997); *cf. Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 916–17 (7th Cir.2001). For circuits suggesting that bankruptcy courts can impose punitive or criminal sanctions, see *Bessette v. Avco Fin. Servs.,* 230 F.3d 439, 445 (1st Cir.2000); *Graham v. United States (In re Graham),* 981 F.2d 1135, 1142 (10th Cir. 1992); *cf. Jove Eng'g,* 92 F.3d at 1558.

Not only have the other circuits struggled with this question, so have the drafters of the Federal Rules of Bankruptcy Procedure. In 1987, the drafters passed Fed. R. Bankr.P. 9020, specifying contempt procedures in bankruptcy court, but noted that the rule might be inapplicable because "bankruptcy judges may not have the power to punish for contempt." Rule 9020 was repealed in 2001.

Now, contempt motions are governed by Fed. R. Bankr.P. 9014 (a generic rule regarding all "contested matters."). The advisory notes explaining this change emphasize the conflicting authorities and state that "[i]ssues relating to the contempt power of bankruptcy judges are substantive and are left to statutory and judicial development, rather than procedural rules."

**16.** We note, however, that *Hanshaw's* distinction between "serious" punitive penalties and non-serious contempt penalties may be informed by the approach we have taken in a variety of sanctioning contexts. In *Miranda v. Southern Pacific Transportation Company,* 710 F.2d 516, 520 (9th Cir.1983), we held that a court could impose a non-compensatory fine of $250 on an attorney in order to vindicate local rules. Although we have reiterated *Miranda's* holding that "relatively mild" non-compensatory fines are appropriate absent the full panoply of criminal protections, *Zambrano v. Tustin,* 885 F.2d 1473, 1479 (9th

of the language of § 105(a) is reinforced by the fundamental due process considerations we discussed in *Hanshaw*. That case held that due process requires that an individual accused of criminal contempt receive several procedural protections, including a jury trial, before "serious criminal penalties" can be imposed. 244 F.3d at 1138 (citing *Bagwell*, 512 U.S. at 833, 114 S.Ct. 2552).

The bankruptcy court is ill-equipped to provide those procedural protections. For example, the bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court. 28 U.S.C. § 157(e).[17] Further, allowing a non Article III court to adjudicate criminal contempt raises fundamental constitutional questions.[18] These considerations confirm our reading of § 105(a).

The proposition that due process prevents a bankruptcy court from imposing serious punitive sanctions under the contempt authority of § 105(a) for an automatic stay violation has been portrayed as being in some tension with the bankruptcy court's authority to impose punitive damages under § 362(h). *See Cox v. Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir.2001) (so stating). We do not see any such tension as pertinent for present purposes. Regardless of the bankruptcy court's ability to award punitive damages under express statutory authorization such as § 362(h), we conclude that additional procedural protections are required where, as here, a court utilizes its broad contempt powers to vindicate its own authority.

When a court merely implements the will of Congress—such as by awarding punitive damages to litigants under § 362(h)—there is no concern that a court is abusing judicial power shielded from direct democratic control. In contrast, the contempt power is "uniquely liable to abuse," in part because "[u]nlike most areas of the law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Bagwell*, 512 U.S. at 831, 114 S.Ct. 2552.

Cir.1989) (reversing sanctions based on inherent power award on other grounds), we have also warned that "[i]t is nevertheless possible for a monetary sanction to assume the criminal character of a fine." *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1180 (9th Cir. 1986), *as amended by* 803 F.2d 1085. *See also, Mark Indus., v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir.1995) (authorizing non-compensatory damages under district court's inherent authority but stating that an appropriate award would be "at most, $5,000").

17. We do not preclude the possibility that a bankruptcy court could initiate criminal contempt proceedings by referring alleged contempt to the district court. Nor do we address whether the district court could refer those proceedings back to the bankruptcy court if the parties so consented. *See* 28 U.S.C. § 157(e) (authorizing the bankruptcy court to hold a jury trial only "if specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties"). *Cf.* Lawrence Ponoroff & Stephen Snyder, *Can Bankruptcy Judges Conduct Jury Trials?*, Commercial Bankruptcy Litigation § 3:21 (2002) (discussing the constitutional question lurking behind 28 U.S.C. § 157(e), but suggesting that consent may cure any constitutional problems). *See generally*, S. Elizabeth Gibson, *Jury Trials and Core Proceedings: The Bankruptcy Judge's Uncertain Authority*, 65 Am. Bankr.L.J. 143, 161–163, 166–168 (1991).

18. Richard Murphy, *Can They Do That? The Due Process and Article III Problems of Proposed Findings of Criminal Contempt in Bankruptcy Court*, 78 Minn. L.Rev. 1607, 1631–35 (1994); Belinda K. Orem, *The Impertinent Contemnor: The Power of Bankruptcy Courts to Imprison*, 25 Cal. Bankr.J. 222, 239–240, 242–44 (2000).

Additional procedural protections are therefore required before that authority can be used in a punitive fashion. As the Eighth Circuit aptly stated when it held—exactly as we do here—that § 105(a) does not authorize punitive sanctions for automatic stay violations:

> [T]he power to *punish* for a statutory violation is a criminal law power. It must be expressly conferred by Congress, and its exercise is often subject to the procedural safeguards that protect the criminally accused ... We conclude that Congress has conferred no power to *punish* for a violation of § 362(a) other than the punitive damage authority in § 362(h).

*Just Brakes,* 108 F.3d at 885 (emphasis added). *See also Cox,* 239 F.3d at 917 (refusing to extend bankruptcy court's ability to award punitive damages beyond express congressional grant of that authority in provisions such as § 362(h)).

We therefore conclude that when a bankruptcy court exercises the contempt authority of § 105(a), it may not impose serious punitive sanctions.

### (c) The Compensatory Sanctions

 Having rejected the Trustee's contention that the entire award can be upheld as punitive sanctions under a criminal contempt authority, we go on to consider the extent to which the sanction award can be sustained as compensatory damages under the civil contempt authority. The bankruptcy court clearly erred in concluding that the Trustee could recover, as compensatory damages, all of the attorneys' fees from the underlying litigation. Some award of attorneys' fees to the Trustee may, however, be appropriate. We emphasize that attorneys' fees are an appropriate component of a civil contempt award. *See, e.g., Walls,* 276 F.3d at 507.

Mr. Lindblade initially took the position that his post-petition recordation was voidable, rather than void. The Trustee was therefore justified in seeking a declaration voiding the recordation. Reasonable attorneys' fees incurred in the process of voiding the violation of the automatic stay were properly awarded as compensatory damages for the violation.

A substantial portion of the underlying proceedings, however, was dedicated to determining whether Mr. Lindblade's deed, though unrecorded, was nonetheless enforceable against the Trustee. Mr. Lindblade was entitled to press those claims regardless of the validity of the post-petition recordation. Indeed, the bankruptcy court agreed with Mr. Lindblade that the unrecorded deed, if valid, was enforceable.

Another substantial part of the proceedings was devoted to the Trustee's contention that the deed of trust was not secured by a loan, but rather by a gift, in which case the unrecorded deed was a nullity. As that claim is not connected to the recordation issue (and as we have concluded that Mr. Lindblade was correct in that regard as well), sanctions for pressing that claim are not appropriate.[19]

None of the attorneys' fees incurred by the Trustee in defending against Mr. Lindblade's claim that the unrecorded deed of trust was enforceable, nor any fees relating to the gift/loan issue, can be sustained as damages flowing from the stay violation. We therefore remand for a determination of the Trustee's actual damages flowing from the automatic stay violation alone.

---

19. We do not conclude that Mr. Lindblade was correct in pressing his claim that the $97,782.33 amount was a loan. Nonetheless, we fail to see how attorneys' fees spent litigating that issue flowed from the automatic stay violation.

### 3. Sanctions under the Bankruptcy Court's Inherent Authority

 Finally, we address the bankruptcy court's attempt to justify the sanction award under its inherent sanction authority. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 42–47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), held that Article III courts have an "inherent authority" to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. In *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 284 (9th Cir.1996), we held that bankruptcy courts, like district courts, also possess that inherent power.

In so concluding, we noted that § 105(a) "impliedly recognized" this inherent power. *Id.* The inherent authority derives not from statutory grants but rather from the very creation of the court (unless Congress intentionally restricts those powers). *Id.* at 283. We looked to § 105(a) to confirm our conclusion that Congress had not intended to restrict the bankruptcy court's inherent power to sanction bad faith litigation. *Id.* at 284. Because *Rainbow Magazine* referenced § 105(a), it is tempting to conclude that a bankruptcy court's inherent sanction power and the civil contempt powers of § 105(a) are interchangeable. Our cases have been less than clear concerning whether they are. *Compare Bennett,* 298 F.3d at 1069 (discussing the concepts without differentiation) *with Rainbow Magazine,* 77 F.3d at 278, 284 (differentiating between the two concepts). *See also United States v. Arkison (In re Cascade Roads, Inc.),* 34 F.3d 756, 767 (9th Cir.1994) (noting the conflicting descriptions).

 We do discern a difference. Civil contempt authority allows a court to remedy a violation of a specific order (including "automatic" orders, such as the automatic stay or discharge injunction). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics. *Fink v. Gomez,* 239 F.3d 989, 992–93 (9th Cir.2001).

 The inherent sanction authority differs from the civil contempt authority in an additional respect as well. Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct. *Id.* In this context, "willful misconduct" carries a different meaning than the meaning employed in the context of determining whether an individual is entitled to damages under § 362(h) or a contempt judgment under § 105(a) for an automatic stay violation. With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness. *Id.* at 993–94. Although "specific intent to violate the automatic stay" may not be required in the contempt context, *Pace,* 67 F.3d at 191, such specific intent or other conduct in "bad faith or conduct tantamount to bad faith," *Fink,* 239 F.3d at 994, is necessary to impose sanctions under the bankruptcy court's inherent power.

 Here, the bankruptcy court concluded that Mr. Lindblade's automatic stay violation was done in "bad faith." We hesitate, however, to endorse that conclusion without a more explicit finding of fact. As we have stated, there is no indication in the record as it stands that Mr. Lindblade or his attorney was aware, when sending the May 1 letter, that by recording the deed they would violate the automatic stay. Indeed, it is hard to believe that they would have announced in the letter, in advance, their intent to record the deed had they realized that doing so would violate a court order. Mere ignorance or inadvertence is not enough to support a

sanction award under the inherent authority. *Fink*, 239 F.3d at 992–93.

After the post-petition recordation Mr. Lindblade did assert, for a time, that the recordation was not automatically void. But he subsequently abandoned that position, and took no further steps to enforce his deed of trust, such as foreclosing on the property. Though Mr. Lindblade vigorously asserted the validity of his *unrecorded* deed of trust, he was entitled to do so, as his position in that regard was far from frivolous. Indeed, the bankruptcy court held that it was correct.

We need not resolve whether the district court was correct in finding that Mr. Lindblade violated the automatic stay in bad faith, however. The bankruptcy court's inherent sanction authority, we conclude, like its civil contempt authority, does not authorize significant punitive damages, so the punitive sanctions cannot stand, whatever Mr. Lindblade's degree of culpability.[20]

Just as we have never authorized a punitive damage award under the bankruptcy court's civil contempt authority, so too have we refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority. Although *Rainbow Magazine* did not expressly limit the inherent sanctioning power to compensatory sanctions,[21] the case has been interpreted as so limited. *See, e.g., In re Les Deville*, 280 B.R. 483, 494–98 (9th Cir. BAP 2002) (relying, in part, on *Rainbow Magazine* for proposition that a bankruptcy court can rely on inherent authority to impose sanctions, but concluding

that sanctions which are punitive in nature cannot be sustained under that authority). We agree with that interpretation of *Rainbow Magazine*. No question of punitive sanctions was before the court, nor did the opinion purport to address the issue.

Addressing the issue of *punitive* inherent authority sanctions as one of first impression, we conclude that the same reasons underlying our holding that the bankruptcy court lacks the authority to impose serious punitive sanctions under its contempt authority indicate the answer to the parallel question concerning the inherent sanction authority. Indeed, *Hanshaw* is even more directly on point as to the inherent sanction issue than it was with regard to civil contempt: In *Hanshaw*, we made clear that "when a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding," including the right to a jury trial. *Hanshaw*, 244 F.3d at 1139–40. "[D]ue process guarantees need to be observed when a court resorts to its inherent power to punish misconduct simply because those powers are enormous; the procedural guarantees are the restraint that protects against intended or unintended abuse of that power." *Id.* at 1139.

Therefore, even if the bankruptcy court properly resorted to its inherent authority to sanction Mr. Lindblade, the punitive portion of the award could not be sustained under that authority. Only the compensatory sanctions are appropriate. We therefore remand the sanction award

---

20. Nor need we decide whether the bankruptcy court must find bad faith by clear and convincing evidence or under a preponderance of the evidence standard, a question not yet resolved in this circuit. *Hanshaw*, 244 F.3d at 1143 at n. 11.

21. *Rainbow Magazine* did not explicitly state that the award was compensatory. A review

of the underlying proceedings in that case, however reveals that the sanction award was tied to costs and attorneys' fees and was therefore compensatory. *Caldwell v. Unified Capital Corp., (In re Rainbow Magazine)*, 136 B.R. 545, 550, 554–555 (9th Cir. BAP 1992).

to the bankruptcy court to determine the appropriate scope of the compensatory sanction award.

### C. Evidentiary Issues

We face one last bit of housekeeping. The bankruptcy court struck a declaration from Mr. Lindblade's attorney, Teunisse, filed in support of Mr. Lindblade's opposition to the Trustee's motion for damages and attorneys' fees. We remand this evidentiary ruling for further consideration in light of our holdings.

Although the Teunisse declaration was served on the Trustee late, the untimeliness of service cannot explain the bankruptcy court's ruling. The bankruptcy court did admit portions of the declaration, so it could not have rejected the declaration as untimely.

The Trustee also made several other specific evidentiary objections to the Teunisse declaration, however, which arguably justify the bankruptcy court's decision to strike portions of the declaration. Because the bankruptcy court did not articulate its basis for striking the Teunisse declaration and the evidentiary issues are cast in a different light by our conclusion, contrary to that of the bankruptcy court, that a detailed analysis of the Trustee's attorneys' fee request is necessary, we decline to consider those evidentiary rulings at this juncture. Rather, we leave it to the discretion of the bankruptcy court to consider what, if any, additional evidence it will accept from the parties on remand.

### CONCLUSION

For the reasons stated, we **REVERSE** the bankruptcy court's determination that Mr. Lindblade's deed of trust was secured by a gift, rather than a loan, **AFFIRM** the bankruptcy court's determination that Mr.

---

Lindblade willfully violated the automatic stay provision of 11 U.S.C. § 362, and **REMAND** the issue of compensatory sanctions for calculation according to the principles stated in this opinion.

Each party shall bear their own costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**