FILED

DEC 24 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-13-1145-TaDKi |
| ) | |
| H GRANADOS COMMUNICATIONS, ) | Bk. No.   1:12-bk-10197-AA |
| INC., ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| REDIGER INVESTMENT ) | |
| CORPORATION; DURINGER LAW ) | |
| GROUP, PLC, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| H GRANADOS COMMUNICATIONS, ) | |
| INC. ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed – December 24, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

Appearances:     Edward L. Laird, II of Duringer Law Group, PLC argued for appellants Rediger Investment Corporation and Duringer Law Group, PLC; Elaine V. Nguyen of Weintraub & Selth, APC argued for appellee H. Granados Communications, Inc.

Before:  TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

The bankruptcy court held appellants Rediger Investment Corporation ("Rediger") and its counsel, the Duringer Law Group, PLC ("Duringer Firm" and, jointly, the "Appellants") in civil contempt under 11 U.S.C. § 105(a)[1] for violation of the automatic stay. As a result, it awarded sanctions against the Appellants, jointly and severally, in the amount of $23,072.09. Rediger and the Duringer Firm appeal. We AFFIRM.

## FACTS

The Duringer Firm, representing Rediger, commenced an unlawful detainer action in state court ("State Court Action") against H Granados Communications, Inc. ("Debtor") and its president, Henry Granados. Four months later, the Debtor filed for bankruptcy relief under chapter 11. It listed Rediger on its Schedule F, its List of Creditors Holding 20 Largest Unsecured Claims, and its creditor mailing matrix.[2] As a result, Rediger promptly received notice ("Notice of Bankruptcy") of the bankruptcy case (the "Bankruptcy"). At an early point in the Bankruptcy, the Debtor obtained an order limiting notice of most events in the chapter 11 case to, among

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents filed in the bankruptcy case. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

others, the 20 largest unsecured creditors; this included Rediger. Thus, Rediger received notices throughout the Bankruptcy.

It also appears that the Debtor filed the Notice of Bankruptcy in the State Court Action on or about the petition date of January 8, 2012. The record includes a copy of the Notice of Bankruptcy bearing a stamp of the Executive Officer/Clerk for the Superior Court of California, County of Los Angeles, dated January 8, 2012. ECF No. 226, Ex. G at 29. The record also contains a copy of the case summary in the State Court Action as of January 23, 2013, which includes an entry dated January 8, 2012 and states "Notice of Bankruptcy Filed." ECF No. 242, Ex. J at 70. Debtor's counsel submitted these documents, and there is no evidence that the Duringer Firm objected to submission of the documents as evidence. In fact, and as discussed further below, the Duringer Firm conceded the veracity of these documents at oral argument.

Despite this notice, the Duringer Firm (on behalf of Rediger) continued to prosecute the State Court Action against the Debtor during the first three-quarters of 2012: it obtained a default judgment against the Debtor and Mr. Granados, filed a declaration of accrued interest, and eventually obtained a writ of execution.

Debtor's bankruptcy counsel apparently was oblivious to the events occurring in the State Court Action;[3] but eventually, on

---

[3] It is unclear from the record who represented the Debtor in the State Court Action.

3

November 1, 2012, she personally filed a notice of stay of proceedings ("Notice of Stay") in the State Court Action and served the same on both Rediger and the Duringer Firm. As a result, there is no dispute that as of November 2, 2012, both Rediger and the Duringer Firm knew that the Bankruptcy existed.

One month later, the Los Angeles County Sheriff levied on the Debtor's DIP bank account at City National Bank ("Bank"), which deprived the Debtor of the use of $27,941.26. In response, Debtor's counsel wrote to the Sheriff and the Bank, advising of the pending Bankruptcy and demanding a release of the levy. Debtor's counsel also sent this letter to the Duringer Firm, underscoring the bankruptcy notices previously provided to the Appellants.

This letter initiated a series of communications between Debtor's counsel and the Duringer Firm. It appears, in particular, that the latter was attempting to obtain verification of the exact party in bankruptcy; that is, whether it was the Debtor or Mr. Granados or both. The volley of communications went on for over a month.

At the end of December 2012, the Debtor moved for an order to show cause why the Appellants should not be found in contempt for willfully violating the automatic stay. The bankruptcy court issued an order to show cause and identified five events as possible stay violations: (1) filing a request for entry of default judgment and supporting declaration in the State Court Action; (2) obtaining entry of default judgment; (3) filing a declaration of accrued interest and obtaining a writ of execution; (4) causing the Los Angeles County Sheriff to serve a

4

levy on the Debtor's DIP bank account at the Bank; and (5) refusing to release the levied funds despite repeated requests by Debtor's counsel.

During this time, the Debtor also actively worked to remedy (or limit the effects of) the stay violations with respect to both the State Court Action and levied funds. On January 15, 2013, the levy of funds finally was released and credited to the Debtor's DIP bank account. One week later, the state court vacated the previously entered default judgment.

The bankruptcy court heard the OSC and found that both Rediger and the Duringer Firm willfully violated the stay. It, therefore, held them in civil contempt under § 105(a), awarded compensatory damages, and instructed the Debtor to file declaratory evidence of the fees and costs incurred as a result of the stay violations. The Debtor submitted a memorandum ("Damages Memorandum"), along with the declarations of its counsel and an employee, detailing the costs and expenses incurred by counsel and employees in connection with the stay violations. The bankruptcy court entered its order holding the Appellants in civil contempt ("Contempt Order") on February 19, 2013.

At a continued hearing on the sanctions issue, the bankruptcy court, relying on its tentative ruling, awarded the compensatory sanctions for costs incurred as a result of the stay violations. These included attorneys' fees for review of the Appellants' opposition to the Damages Memorandum and appearance at the sanctions hearing. The bankruptcy court thereafter entered an order awarding sanctions against the

5

Appellants, jointly and severally, in the amount of $23,072.09 ("Sanctions Award").

The Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in: (1) finding that the Appellants wilfully violated the automatic stay and, thus, holding them in civil contempt; or (2) awarding sanctions against them in connection with the civil contempt determination?

## STANDARDS OF REVIEW

We review the decision to impose contempt and an award of sanctions for an abuse of discretion. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (civil contempt); Rosales v. Wallace (In re Wallace), 490 B.R. 898, 904-05 (9th Cir. BAP 2013) (sanctions award for civil contempt). The underlying factual findings are reviewed for clear error. In re Dyer, 322 F.3d at 1191.

Abuse of discretion is a two-prong test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for application. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. See id. at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was

6

clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  See id.

**DISCUSSION**

**A.   Preliminary Issues**

   **1.   The Appellants' request for judicial notice is denied.**

The Appellants move for this Panel's judicial notice, pursuant to Federal Rule of Evidence 201, of the following documents in the State Court Action: (1) the state court complaint; and (2) a judgment and writ of possession entered on September 22, 2011.  We reviewed the documents and deny the motion for judicial notice as the documents do not enhance our review or otherwise lend assistance in the present appeal.

   **2.   The scope of appeal includes the Contempt Order.**

The Debtor argues that appeal of the Contempt Order is untimely.  It contends that Appellants filed the Notice of Appeal more than 14 days after entry of the Contempt Order and also failed to designate the Contempt Order therein.

The Contempt Order was an interlocutory order that became final and appealable once the bankruptcy court awarded sanctions.  See Weyerhaeuser Co. v. Int'l Longshoremen's & Warehousemen's Union, 733 F.2d 645, 645 (9th Cir. 1984); see also Donovan v. Mazzola, 761 F.2d 1411, 1417 (9th Cir. 1985). Upon entry of the Sanctions Award, the Contempt Order merged into the earlier order.  Thus, the Contempt Order is also subject to this appeal.  See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp., 248 F.3d 892, 897-98 (9th Cir. 2001). ///

7

**B.     The Bankruptcy Court Did Not Err in Entering the Contempt Order.**

**1.     The record is sufficient to review the issues on appeal.**

A motion for contempt is a contested matter and, consequently, subject to Rule 9014.  In turn, in a contested matter, the bankruptcy court must render findings of fact and conclusions of law as required by Civil Rule 52(a) (incorporated by Rules 7052 and 9014(c)).

Here, the bankruptcy court made no express findings in connection with the Contempt Order, but did adopt a tentative ruling.  The tentative, however, merely states that the bankruptcy court intended to grant the Debtor's request for civil contempt; it contains no factual discussion or legal analysis.  Thus, the tentative is not a substitute for the findings required by Rule 9014(c).

Where the bankruptcy court rules without articulating its findings, however, there is no reversible error where the record provides the reviewing court with a full, complete, and clear view of the issues on appeal. First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012) (citation omitted).  Review of the record suffices when it contains clear references to the factual basis supporting the bankruptcy court's ultimate conclusions. Id.  Here, the record as a whole provides us with a full, complete, and clear view of the issues on appeal. Therefore, we turn to review of the Contempt Order.

///

8

**2. The Appellants wilfully violated the automatic stay**.

Section 362(k) permits the recovery of damages resulting from a stay violation. This subsection, however, applies only to individuals, which, as relevant here, excludes corporations. See Johnston Envtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, 619 (9th Cir. 1993) (discussing former § 362(h)). Nonetheless, a corporation may be entitled to recovery for a stay violation under § 105(a) as a sanction for civil contempt. See id. at 620; In re Dyer, 322 F.3d at 1191 (for civil contempt purposes, the automatic stay under § 362 "qualifies as a specific and definite court order.").

To find a party in civil contempt for a stay violation, the threshold inquiry turns on a finding of "willfulness." Id. at 1191. The bankruptcy court must find that: (1) the party knew of the automatic stay; and (2) the party's actions that violated the stay were intentional. Id. Thus, it is irrelevant whether the party exhibited bad faith or had a subjective intent to violate the stay. Id. The movant bears the burden of showing by clear and convincing evidence that the party violated the stay. See id.

In its opening brief, the Duringer Firm contends that it was unaware of the Bankruptcy until Debtor's counsel served it with the Notice of Stay on November 2, 2012. The law firm does not expressly contest that Rediger, its client, was aware of the Bankruptcy; in fact, the law firm conceded as much at the sanctions hearing.

At oral argument, however, the Appellants expressly conceded a willful violation of the automatic stay. In

9

particular, the Duringer Firm, in substance, conceded that the Notice of Bankruptcy was filed in the State Court Action at the commencement of the Bankruptcy. The law firm subsequently conceded that the stay was willfully violated. This is sufficient to affirm a "willfulness" finding under § 105(a), and our review of the bankruptcy court's finding of civil contempt for a stay violation need not go any farther.

Even so, the record supports the bankruptcy court's determination of "wilfulness." First, as previously stated, the record contains two documents showing that the Notice of Bankruptcy was filed in the State Court Action on or about the date of the bankruptcy petition. The Appellants neither contested this below or on appeal; the Duringer Firm, instead, conceded the veracity of the documents at oral argument. This establishes that the Appellants were cognizant of the Bankruptcy – and, more importantly, aware of the automatic stay – in January of 2012.

In addition, the record further supports that the Appellants were otherwise made aware of the Bankruptcy and the automatic stay long before the OSC issued. As to Rediger, the record shows that it was served with the Notice of Bankruptcy at the end of January 2012. And, as one of the Debtor's largest 20 creditors, Rediger continued thereafter to receive notices of the Debtor's filings. Rediger, thus, was, charged with notice of the stay shortly after the case was filed.

As to the Duringer Firm, even if we accept that it was unaware of the Bankruptcy until November 2012 – which we do not – the record is clear that Debtor's counsel served the law firm

10

with the Notice of Stay on November 2, 2012. The law firm, thus, clearly had notice of the Bankruptcy as of that date.

In sum, the record provides alternative evidence supporting that the Appellants were aware of the Bankruptcy and, thus, charged with knowledge of the automatic stay at various points during the Bankruptcy; this satisfies the first prong of the "willfulness" standard under Dyer.

The second prong requires that the actions taken in violation of the stay were intentional. The record affirms that the Duringer Firm, on behalf of its client Rediger, pursued relief in the State Court Action that violated the stay: namely, moving for and then obtaining a default judgment; filing a declaration of accrued interest; obtaining a writ of execution; and causing the Los Angeles County Sheriff to levy on the Debtor's DIP bank account. The Duringer Firm also failed to take affirmative action to undo the effects of stay violative action after receiving the November 2, 2012 notice; it did not vacate, and it did not cancel, the default judgment. True, there was limited confusion as Debtor's counsel initially checked a box indicating that both defendants, not just the Debtor, were in bankruptcy. But this over-inclusion of parties, if anything, required a cessation of the entire State Court Action until further clarification - instead, it stopped nothing.

These instances are each and independently an intentional stay violation. These were not accidental or inadvertent actions by the Duringer Firm. Thus, the second prong of the Dyer standard is satisfied.

11

This record clearly supported a determination of "willfulness." The Duringer Firm's admission at oral argument further supports that the bankruptcy court did not abuse its discretion in holding the Appellants in civil contempt for violation of the automatic stay.

**C.    The Bankruptcy Court Did Not Err in Entering the Sanctions Award.**

It appears that the Appellants advance three main arguments against the Sanctions Award: (1) that under Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010), damages for a stay violation under § 105(a) are limited to efforts to enforce the stay or remedy a violation, but do not include costs incurred in pursuing sanctions; (2) that in order for Debtor to recover damages, the Appellants' actions must have interfered with the Debtor's reorganization efforts; and (3) that the charges awarded are beyond the scope authorized by Ninth Circuit and U.S. Supreme Court authority and otherwise are unreasonable. We address these arguments in turn.

**1.    Stay violation damages appropriately include attorneys' fees incurred after the Appellants remedied the stay violations.**

In the Ninth Circuit, a debtor's recovery of attorneys' fees under § 362(k) is limited to fees and costs incurred in enforcing and remedying the stay violation; it does not include fees and costs incurred in pursuing damages for the stay violation. Sternberg, 595 F.3d at 947. Sternberg, however, does not control here because the Debtor is not an individual and, thus, as a matter of law, § 362(k) is inapplicable.

12

Moreover, Sternberg does not limit the recovery of fees and costs to § 362(k); instead, a debtor's recovery of damages is also available under § 105(a). This is confirmed in the decision itself, which provides that the basis for the decision was the statutory language of § 362(k), not the bankruptcy court's civil contempt authority under § 105(a). See id. at 946 n.3 ("As this opinion does not consider the civil contempt authority of the court, it does not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate.").

There is no clear authority in our circuit that expressly limits the recovery of fees under § 105(a) solely to those incurred in enforcing and remedying a stay violation. Indeed, analogous case authority involving § 105(a) sanctions suggests a result to the contrary. In the context of a willful violation of the discharge injunction, the bankruptcy court may award actual damages *and* attorneys' fees to the debtor as a civil contempt sanction. See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) ("[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction."); Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 880 (9th Cir. BAP 2012) (bankruptcy court may award actual damages, punitive damages, and attorneys' fees as a civil contempt sanction for a willful violation of the discharge injunction); see also Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), aff'd, 559 U.S. 260 (2010) (same). While not

13

identical transgressions, a stay violation under § 105(a) is analogous to a discharge injunction violation; both implicate offenses to prophylactic injunctions exclusively available under the Bankruptcy Code.

Further, unlike a damages award under § 362(k), an award of attorneys' fees and costs under § 105(a) does not arise in "an ordinary damages action." See Sternberg, 595 F.3d at 948. The text of § 105(a) does not provide for or otherwise reference the term "damages." Instead, civil contempt under § 105(a) enables the bankruptcy court to remedy a violation of a specific order. See In re Dyer, 322 F.3d at 1196. Thus, the "American Rule" on attorneys' fees is inapplicable in a § 105(a) context. See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (exception to the American Rule exists where a party violates a court order).

Based on the foregoing, we hold that a damages award under § 105(a) for a willful stay violation may appropriately include attorneys' fees and costs incurred in pursuing damages for the violation.

**2.     Whether a creditor's stay violation interferes with a chapter 11 debtor's reorganization efforts is irrelevant to calculating damages.**

The Appellants next argue that in order to recover damages for a stay violation, a debtor must show that the creditor's actions interfered with the debtor's reorganization efforts. In support of this proposition, they cite In re Orient River Invs., Inc., 105 B.R. 790 (Bankr. E.D. Pa. 1989); Matter of Lehan Bros., Inc., 29 B.R. 553 (Bankr. M.D. Fla. 1983); and In re

14

Augustino Enters., Inc., 13 B.R. 210 (Bankr. D. Mass. 1981).

We reject this argument. The case authority cited in support of this proposition is inapposite. None of these cases involved sanctions under § 105(a); instead, they predominantly address damages under the predecessor of § 362(k), which, as previously discussed, does not apply here. The relevant inquiry in calculating damages is whether the Debtor sustained injury as a result of the Appellants' violative actions; the manner in which it sustained injury is not, in and of itself, dispositive of the inquiry.

**3.     The bankruptcy court did not err in awarding the attorneys' fees based on the Appellants' civil contempt.**

Further, the Appellants contend that certain charges awarded (as designated in an exhibit to their opposition to the Debtor's Damages Memorandum) exceed the scope of fees permitted under pertinent authority and are otherwise unreasonable. They assert that, at most, Debtor's counsel may claim $4,534.50 and that, under federal law, this amount is subject to further reduction under the lodestar method. Additionally, they assert that other considerations require further reduction, including Debtor's counsel's request for attorneys' fees for clerical tasks and online research. In conclusion, Appellants argue that $2,500 is a reasonable amount for sanctions based on these considerations, as well as the experience of Debtor's counsel, the limited skill required to file a motion for a contempt order, and the fact that Debtor could have avoided the whole encounter had its counsel promptly communicated with the

15

Duringer Firm.

Sanctions for civil contempt must either be compensatory or designed to coerce compliance. See In re Dyer, 322 F.3d at 1192. Attorneys' fees are an appropriate component of civil contempt sanctions. Id. at 1195. This includes reasonable attorneys' fees incurred in the process of voiding the stay violation. Id. An award of fees incurred in litigating an issue that does not flow from the stay violation, however, is improper. Id. at 1195 & n.19.

The record shows that Debtor's counsel submitted a detailed time summary of fees incurred. These entries reflect legal tasks performed by counsel in connection with the stay violation issues and within the appropriate time frame.

The bankruptcy court approved these costs. In doing so, it implicitly determined that the costs were reasonable and supported by evidence. This, in turn, is supported by the bankruptcy court's statement at the sanctions hearing, providing that it awarded almost but not all of the requested fees and costs. As reflected in the Sanctions Award, it subtracted messenger fees and costs to copy the pleadings filed in the State Court Action. Nor is there anything in the record showing that the Appellants objected to any particular cost or expense with any level of detail or specificity. It, thus, is clear that the bankruptcy court not only reviewed the pertinent documents, but determined that the costs were reasonable and adequately supported.

With the exception of application of the lodestar method, the Appellants fail to support any of these arguments with any

16

authority. They fail to adequately explain, for example, how this Panel may reduce the amount of fees awarded by substituting its own calculation based on the lodestar method. The Appellants also fail to expressly identify which time entries relate to clerical tasks or other inappropriate functions. Ultimately, they paint with broad strokes, but fail to properly support their arguments within the framework of appellate review. We are not in the business of substituting our own factual determinations for those of the bankruptcy court.

At oral argument, the Appellants also argued that the bankruptcy court should have employed a comparative fault system in assessing damages. They argued that the bankruptcy court failed to take into account the Appellants' actions – and the Debtor's alleged inaction – in mitigating the damages resulting from the stay violation. First, we need not consider these arguments inasmuch as it does not appear that the Appellants expressly raised these points before the bankruptcy court.

Second, this is simply not the standard under § 105(a). The Duringer Firm makes much of its efforts to contact Debtor's counsel during the final months of 2012 to confirm whether the Debtor filed bankruptcy. Whatever its motive or belief, the law firm's excuse is irrelevant. Once the Appellants were made aware of the Bankruptcy, the onus was on them to cease all efforts related to the Debtor in the State Court Action without further order from the bankruptcy court and to remedy the impact of existing stay violative actions. See In re Dyer, 322 F.3d at 1192 (creditor has an affirmative duty to remedy a stay violation).

17

It was not the responsibility of Debtor's counsel to further confirm the existence of the Bankruptcy with the Duringer Firm. To the extent that the law firm was truly confused, a search in PACER or the bankruptcy court's CM/ECF system[4] would have provided a simple and swift answer. Nothing precluded the law firm from accessing PACER or CM/ECF – like numerous other creditors and law firms do on a daily basis. It is unclear why the law firm insisted on obtaining this information directly from Debtor's counsel. Instead, it inappropriately disclaimed responsibility for its stay violations, and it failed to take affirmative action to remedy the various stay violations for nearly two months – a violation of the stay in and of itself. Thus, the arguments as to mitigation are largely (or completely) inapposite under these circumstances.

In sum, on this record, the bankruptcy court did not err in awarding the fees as compensatory damages.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court.

---

[4] In fact, our independent review of the website for the Central District of California, see Fed. R. Evid. 201(b)(2) and (c)(1), confirms that links for PACER and CM/ECF exist directly on the actual homepage. See United States Bankruptcy Court for the Central District of California, http://www.cacb.uscourts.gov (last visited on Dec. 24, 2013).

18