**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. WW-13-1337-JuKuPa |
| ) | |
| JESSICA ARLENE NELSON, ) | Bk. No. 11-12572-MLB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| DARRYL PARKER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | M E M O R A N D U M* |
| ) | |
| JESSICA ARLENE NELSON, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed - July 11, 2014

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding
_____

Appearances:     Darryl Parker, Esq., Premier Law Group, PLLC,
on brief pro se; Marc S. Stern, Esq. argued for
appellee Jessica Arlene Nelson.
_____

Before:  JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Debtor Jessica Arlene Nelson moved to have her former attorney Darryl Parker found in contempt for violating § 524.[1] Her motion was based on Parker's postpetition assertion of attorney's liens against settlement proceeds from two auto accident claims that debtor claimed exempt and his subsequent failure to release the liens. The bankruptcy court entered an order against Parker by default, finding him in contempt for violating the discharge injunction under § 524 and voiding the attorney's liens (Contempt Order). The Contempt Order authorized debtor's attorney to file a separate motion for attorneys' fees as a sanction for the contempt. Parker then moved to set aside the Contempt Order and debtor moved for attorneys' fees. The bankruptcy court entered a judgment and order denying Parker's set-aside motion and awarding debtor attorneys' fees in the amount of $2,048.45 (Judgment). Parker appeals from the Contempt Order and Judgment.

For the reasons explained below, we VACATE the Judgment and REMAND to the bankruptcy court for proceedings consistent with this memorandum.

## I.  FACTS

Parker is a civil rights attorney and partner in the Premier Law Group, PLLC (Premier). In July 2010, debtor retained Parker to represent her on a contingency fee basis in connection with two auto accidents that occurred on March 11 and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

12, 2010. When debtor filed her chapter 7 petition on March 9, 2011, the matters were pending.

Debtor listed her interest in the auto accident claims in Schedule B and listed them as exempt property in Schedule C. In Schedule F, she identified Parker as an unsecured creditor owed $9,000 for "costs for prior representation."

Shortly after debtor's filing, Parker made a demand on the at-fault drivers' insurance companies. It is unclear whether Parker made the demand on behalf of debtor or for himself alone. Debtor subsequently discharged Parker. By letters dated June 15, 2011, Parker informed the insurance companies that he no longer represented debtor and gave notice that his office asserted a lien for $5,000 against any settlement proceeds.

A week later, the chapter 7 trustee filed his no asset report. On July 18, 2011, debtor received her discharge and on July 22, 2011, the case was closed and the auto accident claims were deemed abandoned to debtor. The bankruptcy court mailed Parker, who was on the bankruptcy court's mailing matrix, a copy of the Official Form 18 discharge order.

A year and half later, on November 6, 2012, debtor's attorney, Marc Stern, informed Parker by letter that the postpetition attorney's liens asserted against debtor's exempt property, the auto accident settlement proceeds, constituted a violation of §§ 362 and 524 and were void. Attached to the letter was a copy of the discharge order.

One month later, having received no response, Stern sent another letter requesting that Parker contact him to discuss the matter. Included with the letter was a copy of the certified

-3-

mail receipt confirming delivery of the first letter to Darryl Parker, Premier Law Group, 3380 146th Pl SE Ste 430, Bellevue, WA 98007-6480. Parker again did not respond.

On February 6, 2013, debtor filed a motion seeking to hold Parker in contempt for violation of § 524. Debtor submitted her declaration in support stating that she had to fire Parker because he "never did anything." She further declared that in August 2012 she agreed to a settlement of her claims with the insurance companies, but could not finalize them due to the asserted attorney's liens.

Stern served Parker by mail with the motion for contempt and notice of hearing at the address listed above. Parker again did not respond. On March 8, 2013, the day of the hearing, Parker went to the bankruptcy court, but he was advised that the court had already ruled on the matter. The docket reflects no hearing took place, it having been vacated on March 7, 2013.

Prior to the hearing, on March 4, 2013, Stern filed a Declaration of No Objection and submitted a default order. The bankruptcy court questioned whether it could enter the order without reopening the bankruptcy case and whether it could void the attorney's liens when there was an issue of perfection. In a supplemental pleading, debtor maintained that under Wash. Rev. Code (RCW) 60:40:101(1)(c) the attorney's liens were created when Parker gave notice to the insurance companies.

Apparently satisfied that it did not need to reopen the bankruptcy case under the holding in Menk v. LaPaglia (In re Menk), 241 B.R. 896, 906 (9th Cir. BAP 1999), and that the attorney's liens were created postpetition and thus void due

-4-

to the automatic stay, the bankruptcy court entered the Contempt Order on March 26, 2013, finding Parker in contempt and voiding the attorney's liens. The court struck out the portion of the order which awarded $1,000 in attorneys' fees for the contempt and replaced it with the following language: "Should counsel believe attorneys' fees are appropriate, he may bring a separate motion with appropriate evidentiary support as to the amount of fees incurred." Neither the order nor a separate document contained the court's findings of fact or conclusions of law on the contempt.

Stern subsequently filed a motion seeking the approval of his attorneys' fees in the amount of $2,048.45 incurred for bringing the motion for contempt. This motion was noticed for hearing on May 31, 2013, and Stern again served the motion and notice of hearing on Parker at the address mentioned above.

About six weeks after the Contempt Order was entered, on May 6, 2013, Parker filed a motion to set aside the order. Parker argued that the debt for his attorneys' fees in connection with the auto accident claims was not included in debtor's bankruptcy schedules. Parker maintained that the debt listed in Schedule F for $9,000 and described as "costs for prior litigation" were costs incurred in a malpractice action that Premier litigated on debtor's behalf against attorneys that had represented debtor in a wrongful termination suit.

Parker further asserted that he fully prepared both auto accident cases, readied them for settlement and had obtained two firm offers, but debtor rejected the offers, abruptly fired Parker, and then hired another attorney. Parker argued that

-5-

under Washington law, his office was entitled to assert the liens despite the fact debtor had rejected the settlement offers. Finally, Parker contended that he never received actual notice of the motion for contempt, never appeared in the bankruptcy proceedings, and was denied due process because the Contempt Order failed to identify what order he had violated or conduct by him that violated the unidentified order. In short, Parker maintained that debtor's motion for contempt constituted "fraud" because the entire process was to "divert the proceeds from Ms. Nelson's personal injury settlement away from attorney Parker and into the hands of select lawyers." Relying on 28 U.S.C. § 1927, Parker requested sanctions against debtor and Stern in the amount of $5,000.

In a supporting declaration, Parker maintained that he did not receive actual notice of the Contempt Order. Parker explained that his civil rights practice required him to travel extensively and, as a result, he relied on others to sort and open his mail. In that regard, Parker submitted the declaration of Eve Vysotakiy, a law clerk working in his office, who was responsible for his mail. Ms. Vysotakiy declared that it was her responsibility to process Parker's mail because of his constant travel. She further declared that "to date" she had not seen any motion for contempt at any time before or after her leave of absence from February 1, 2013 through March 11, 2013, when she was studying for the bar. Parker later acknowledged that he found the motion and other documents from Marc Stern in a box for delivery of additional documents to closed files.

In response, Stern argued that the mail sent to Parker at

his office address was never returned. Stern maintained that there was no ground to set aside the order under Rule 9023 because it was untimely and the motion did not meet the prerequisites for relief required by Rule 9024.

In late May 2013, Parker filed an opposition to debtor's request for attorneys' fees. Parker argued that he never sent debtor a bill and demand for payment nor did he send her a letter requesting payment. Parker asserted that neither debtor nor Stern were entitled to fees because debtor had never proved the elements of contempt. Parker again maintained that debtor's schedules showed only the costs associated with the malpractice suit and not the automobile accident cases. Finally, Parker alleged that Stern's time was spent on activities other than proving contempt.

On May 31, 2013, the bankruptcy court heard Parker's set-aside motion and his objection to Stern's request for attorneys' fees. For the first time, Parker argued that he was entitled to be paid for the postpetition work he had done on the auto accident cases either at his hourly rate, which was in the fee agreement, or through his asserted attorney's liens. Parker reiterated that only the fees in connection with the malpractice lawsuit were listed in debtor's Schedule F and, therefore, the fees associated with the auto accident cases, which were mostly incurred postpetition, were not discharged.

The bankruptcy court acknowledged that Parker may have been entitled to assert a postpetition lien for postpetition work, but noted that it had no evidence of the work done or a copy of the fee agreement. In addition, the court found that because

-7-

Parker asserted the liens against an asset based at least partially on a prepetition debt, the liens would be void. As a result, the bankruptcy court concluded that even if it set aside the Contempt Order and held an evidentiary hearing, Parker would have a "pretty tough row to hoe. . . ."

The bankruptcy court then considered the various sections of Civil Rule 60(b) (incorporated by Rule 9024) and reasoned that the requirements under subsections (1)-(5) were not met. The court also rejected Parker's contention that he had not been served with the contempt motion and found no miscarriage of justice under the circumstances to warrant relief under Civil Rule 60(b)(6). In the end, the court denied Parker's set-aside motion and concluded that Stern was entitled to his fees, which the court found reasonable.

On June 6, 2013, Stern noticed his motion for entry of the judgment and award of attorneys' fees and order denying Parker's set-aside motion. Parker opposed, contending that the order against him personally and against the marital community was improper. Parker argued that there was no notice to the marital community and that debtor's only contract was with Premier. Parker further objected on the grounds that the court made no findings of fact on any issue orally or in writing and made no conclusions of law with respect to the contempt or on Parker's set-aside motion. Finally, Parker contended that the wording of the judgment was inconsistent with the order.

The court heard the matter on June 28, 2013, and ruled against Parker. After finding that the Judgment and order accurately reflected its ruling, the bankruptcy court stated:

"I'm not sure, Mr. Parker, that you're still getting how the discharge order works or what it means to be in contempt of that." Taking Parker's objection as a request for reconsideration, the court revisited its findings with respect to Stern's fees regarding some of the narrative. After a dialogue on record between the court and Stern regarding these entries, the court allowed the fees. The bankruptcy court entered the Judgment and order consistent with its ruling on July 8, 2013.

On July 12, 2013, Parker filed a notice of appeal (NOA) of the Judgment and order entered July 8, 2013. On July 17, 2013, Parker filed an amended NOA designating the March 26, 2013 order for contempt and the July 8, 2013 Judgment and order as the orders being appealed from.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

Did the bankruptcy court abuse its discretion in: (1) finding that Parker violated the discharge injunction and holding him in contempt; and (2) entering the Judgment awarding attorneys' fees as a sanction for Parker's civil contempt?

## IV.  STANDARDS OF REVIEW

The bankruptcy court's civil contempt order and sanctions are reviewed for abuse of discretion. Rediger Inves. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731-32 (9th Cir. BAP 2013). In determining

whether the court abused its discretion we first determine de novo whether the trial court identified the correct legal rule to apply to the relief requested and then, if the correct legal standard was applied, we determine whether the court's application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010).

## V. DISCUSSION

### A. The Scope Of This Appeal Includes The Contempt Order.

A final judgment, order or decree is one which ends the litigation on the merits and leaves nothing for the trial court to do but execute on the decision. Catlin v. United States, 324 U.S. 229 (1945). The March 26, 2012 Contempt Order does not meet this test of finality. The order established only Parker's liability and gave Stern the opportunity to file a separate motion for his attorneys' fees incurred in bringing the contempt motion. Accordingly, the bankruptcy court still had to decide the amount, if any, of the attorneys' fees.

The Contempt Order became final and appealable once the bankruptcy court awarded the attorneys' fees as sanctions. See Weyerhaeuser Co. v. Int'l Longshoremen's & Warehousemen's Union, Local 21, 733 F.2d 645, 645 (9th Cir. 1984); see also Donovan v. Mazzola, 761 F.2d 1411, 1417 (9th Cir. 1985). Upon entry of the Judgment, the Contempt Order merged into the Judgment. Therefore, the Contempt Order is properly before us in this appeal. See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp., 248 F.3d 892, 897-98 (9th Cir. 2001).

**B.    Standards For Contempt.**

Section 524 provides that the discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." See § 524(a)(2).  "A party who knowingly violates the discharge injunction can be held in contempt under [§] 105(a) of the bankruptcy code." ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006).

The party seeking contempt sanctions has the burden to prove, by clear and convincing evidence, that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. Id. The ZiLOG court explained the knowledge requirement, explicitly recognizing that mere receipt of the discharge order may not constitute the requisite knowledge:

> To be held in contempt, the [alleged contemnors] must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to their claims.  To the extent that the deficient notices led the [alleged contemnors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.

Id. at 1009, n.14.  The court further emphasized that knowledge of the injunction is a question of fact that normally can be resolved only after an evidentiary hearing. Id. at 1007. "Knowledge of the injunction, which is a prerequisite to its willful violation, cannot be imputed; it must be found. . . ." Id. at 1008.

**C.    The Bankruptcy Court Erred In Entering The Contempt Order.**

A motion for contempt is a contested matter and, consequently, subject to Rule 9014.  In turn, in a contested matter, the bankruptcy court must render findings of fact and conclusions of law as required by Civil Rule 52(a) (incorporated by Rules 7052 and 9014(c)).

The bankruptcy court made no findings — legal or factual — in connection with the Contempt Order.  It is unclear what legal rule the bankruptcy court applied when deciding to hold Parker in contempt.  The court never mentioned ZiLOG nor did it point to any evidence presented by debtor which might have met the factors for contempt in this circuit.  Because there are no findings, we are unable to review whether the bankruptcy court abused its discretion in holding Parker in contempt.  Given the seriousness of a finding of contempt, it is all the more important for the bankruptcy court to articulate the legal rule being applied and the explicit findings of fact that support the legal rule.  On remand, the bankruptcy court should apply the factors in ZiLOG and provide sufficient factual findings so that its decision can be evaluated on appeal.  Due to our conclusion, it is unnecessary to address the parties' other arguments on appeal.

### VI.    CONCLUSION

For the reasons stated, we VACATE the Judgment and REMAND for proceedings consistent with our decision.