NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1244-STaF |
| MOO JEONG and MYOUNGJA JEONG, | Bk. No. 6:19-bk-10728-WJ |
| Debtors. | |
| MIN W. SUH, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| KARL T. ANDERSON, Chapter 7 Trustee; CHRISTOPHER KWON; YOUNG SOO OH, | |
| Appellees. | |

Argued and Submitted on February 27, 2020
at Pasadena, California

Filed – March 16, 2020

Appeal from the United States Bankruptcy Court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

for the Central District of California

Honorable Wayne E. Johnson, Bankruptcy Judge, Presiding

Appearances:    Appellant Min W. Suh argued pro se; Tinho Mang of
                Marshack Hays LLP argued for appellee Karl T.
                Anderson, chapter 7 trustee.

Before: SPRAKER, TAYLOR, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Min W. Suh appeals the bankruptcy court's order holding him in contempt for his involvement in the postpetition filing of two "corrective" deeds of trust against the debtors' residence. Suh jointly represented both the debtors and the junior secured creditors during the case and argues that the creditors were not stayed from recording the corrective deeds under § 362(b)(3).[1] We agree with the bankruptcy court that Suh clearly violated the automatic stay. Because Suh had no objectively reasonable basis for concluding that his conduct did not violate the stay, the bankruptcy court did not abuse its discretion when it held him in contempt of court and imposed sanctions.

The trustee has also moved for an award of fees and costs under Rule

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

8020. The motion is well founded. Consequently, we AFFIRM the bankruptcy court's contempt order and direct the trustee to supplement his motion for appellate fees and costs as specified in the body of this decision.

**FACTS**

Suh commenced the Jeongs' bankruptcy by filing their chapter 7 petition. At the time of the filing, the Jeongs owned a residence in Rancho Cucamonga, California. In their schedules, the Jeongs listed three deeds of trust encumbering their residence: (1) a first priority deed of trust in favor of an institutional lender; (2) a second priority deed of trust in favor of Young Soo Oh; and (3) a third priority deed of trust in favor of Christopher Kwon.

The chapter 7 trustee for the Jeongs' estate, Karl T. Anderson, sent letters to Oh and Kwon informing them that the legal descriptions appended to their respective deeds of trust either did not exist or did not accurately describe the Jeongs' residence. Therefore, Anderson claimed that both deeds of trust were void. Anderson requested that Oh and Kwon stipulate to the avoidance, recovery, and preservation of their respective deeds of trust for the benefit of the bankruptcy estate.

Suh sent a letter responding to Anderson's contention that the junior deeds of trust were void. Though he represented the Jeongs, Suh began by stating that he had been retained to represent Oh and Kwon and was responding on their behalf. Suh informed the trustee that Oh and Kwon

3

had requested Ms. Jeong to record new deeds of trust to remedy the defects in the property descriptions pointed out in Anderson's letter. Suh further stated that Ms. Jeong recorded these "corrective" deeds of trust on June 27, 2019, and he attached copies of the two newly-recorded corrective deeds of trust. Suh concluded his letter by requesting that Anderson confirm that Oh and Kwon were holders of valid deeds of trust against the residence.

That same day, Anderson replied to Suh's letter. Anderson asserted that the recording of the corrective deeds of trust constituted a violation of the automatic stay and demanded that Suh and his clients immediately reconvey or withdraw them. Anderson further advised Suh that, "if this violation of the automatic stay is not remedied by [July 5, 2019], the Trustee will file a motion for sanctions against you and each of your clients individually and seek compensatory damages for the violation of the stay, which include attorney's fees."

Suh never responded to Anderson's demand letter. On August 1, 2019, Anderson filed a motion for issuance of an order to show cause why Suh, the Jeongs, Oh, and Kwon, should not be held in contempt. The bankruptcy court promptly entered an order to show cause against the Jeongs, Oh, Kwon, and Suh.

Oh and Kwon, represented by new counsel, opposed the show cause order. The Jeongs, also represented by new counsel, filed a separate opposition. They contended that they relied entirely on the advice of their

4

former counsel, Suh, who prepared the corrective deeds of trust and recommended that the Jeongs sign and record them.

Suh also filed an opposition.[2] Suh argued that § 362(b)(3) carved out an exception to the automatic stay which permitted the recording of the corrective deeds of trust. Suh also argued that the Jeongs could and did waive the automatic stay by filing the corrective deeds of trust.

On August 29, 2019, the bankruptcy court held its first show cause hearing. At the hearing, Suh elaborated on his theory that § 362(b)(3) permitted the recordation of the corrective deeds of trust. According to Suh, § 362(b)(3) permitted any and all steps necessary to perfect a security interest against property of the estate without limitation. After the court pointed out that Suh's limitless interpretation of § 362(b)(3) was inconsistent with the plain language of the statute, Suh changed tack. He then argued, without citing any relevant authority, that the postpetition recording of the corrective trust deeds did not violate the automatic stay because the street address set forth in the original deeds of trust was correct. According to Suh, the postpetition trust deeds did not violate the automatic stay because they merely corrected a minor mistake, and they related back to the prepetition date of the original deeds of trust.

---

[2] Suh's opposition stated that it was filed on behalf of the Jeongs and on his own behalf. Suh later explained that, at the time he filed the opposition, he was unaware that the Jeongs had retained substitute counsel to respond to the show cause order.

The bankruptcy court continued the matter in order to allow the parties an opportunity to explore settlement of the dispute. The court also invited further briefing on the consequences of the errors in the legal descriptions if the matter was not completely settled. But the court also stated that "there was a clear-cut violation of the automatic stay here."

After the first hearing, Anderson settled with the Jeongs, Oh, and Kwon. In exchange for the reconveyance of the corrective deeds of trust and the secured creditors' payment of $6,000.00 in attorney's fees, Anderson agreed to dismiss the contempt proceedings as against all respondents other than Suh.

Suh filed a supplemental brief in support of his opposition to the show cause order. He continued to press his argument under § 362(b)(3) that the junior secured creditors were entitled to procure and record new postpetition deeds of trust to correct deficiencies in the prepetition deeds of trust. He claimed that this argument amounted to reasonable doubt as to whether his actions violated the automatic stay. He also argued, for the first time, that he was not in contempt because he could not have remedied any stay violation. According to Suh, because the Jeongs substituted in new counsel, there was nothing he personally could have done to unwind the corrective deeds of trust.

Meanwhile, Anderson filed a supplemental declaration of his counsel detailing that he had incurred $9,078.00 in fees and $1,049.53 in costs, for a

total of $10,127.53 in damages, to enforce the automatic stay. The declaration further advised the court of Anderson's settlement in principle with all of the respondents other than Suh, pursuant to which they had agreed to pay a portion of Anderson's compensatory damages.

The bankruptcy court then held its second and final hearing on the show cause order. Anderson advised the court that the respondents other than Suh had delivered to him copies of the recorded reconveyances of the corrective deeds of trust and had paid him $6,000.00 in partial satisfaction of his $10,127.53 in fees and expenses incurred through the first hearing on the order to show cause.

At the hearing, Suh reiterated his prior arguments. He additionally posited that the other respondents' settlement further capped his liability. He continued to argue that his liability for any stay violation ended when he was terminated as counsel because he thereafter was unable to remedy any stay violation. But in light of the settlement in which the other respondents accepted responsibility for roughly 60% of Anderson's fees and expenses, Suh maintained that any contempt sanctions should be limited to 40% of the attorney's fees accrued through the date the respondents replaced him as counsel. Suh calculated this to be roughly $300.00.

The bankruptcy court rejected Suh's arguments and found him in contempt for knowingly and intentionally violating the automatic stay by

7

preparing the corrective deeds of trust and advising the Jeongs that they should be signed and recorded. The court observed that Suh's apparent inability to fix the harm caused by his stay violation did not free him from liability for the compensatory contempt sanctions necessary to make the bankruptcy estate whole.

On September 16, 2019, the bankruptcy court entered its order holding Suh in contempt of court and imposing against him $4,127.53 in compensatory contempt sanctions, which represented the unpaid balance of the trustee's attorney's fees. In addition to its prior oral findings, the court found in the contempt order that, when Suh recorded the corrective deeds of trust, he knew of the automatic stay, did not harbor any fair ground of doubt that recording them would violate the stay, and hence willfully violated the stay.

Suh timely appealed. Anderson filed a responsive appeal brief and a separate motion under Rule 8020. Anderson claims that this appeal is frivolous and he is entitled to recover his fees and costs. Suh has opposed the motion, but his opposition merely repeats his arguments on appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Did the bankruptcy court abuse its discretion when it held Suh in contempt of court and imposed against him $4,127.53 in sanctions?

2.     Is Anderson entitled to recover his attorney's fees and costs on appeal?

## STANDARD OF REVIEW

We review the bankruptcy court's imposition of contempt sanctions for an abuse of discretion. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 731 (9th Cir. BAP 2013). The bankruptcy court abuses its discretion when it applies an incorrect legal rule or when its factual findings are clearly erroneous. *See United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). A court's factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985).

## DISCUSSION

### A.     The Bankruptcy Court Did Not Abuse Its Discretion When It Found Suh in Contempt of Court.

A chapter 7 trustee may seek compensatory contempt sanctions against a party who violates the automatic stay. *In re Dyer*, 322 F.3d at 1189-90.

To hold a party in contempt, the movant must show by clear and convincing evidence that the party violated a specific and definite court order. *Id.* at 1190-91. The automatic stay qualifies as a specific and definite court order. *Id.* at 1191. The stay violation also must be willful. *Id.* For purposes of finding contempt, willfulness does not depend on the party's intent or subjective belief. *Id.* All the movant needs to show is that the contemnor knew of the automatic stay and that he or she intended the actions that violated the stay. *Id.*

The Supreme Court recently clarified the legal standard governing contempt in the discharge context. As held in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019), the bankruptcy court can exercise its discretion to impose civil contempt sanctions when the contemnor had "no objectively reasonable basis for concluding that [its] conduct might be lawful." Put differently, when there was no "fair ground of doubt" as to whether the subject order barred the conduct the violator engaged in, the court has the discretion to hold the violator in contempt of court. *Id.* at 1804.

Suh does not dispute that the court applied the correct legal standard when it held him in contempt.[3] Nor does he dispute that he was aware of

---

[3] We assume that the contempt standard applied to the discharge violation in *Taggart* also applies to a violation of the automatic stay. Neither the parties, nor the bankruptcy court, has suggested that any other standard should apply. Furthermore, application of the same contempt standard for stay violations and bankruptcy discharge violations is consistent with the Ninth Circuit's prior precedent holding that the same

(continued...)

the automatic stay and that, as counsel for Oh and Kwon, he intentionally prepared the corrective deeds of trust and caused Ms. Jeong to execute and record them. Instead, he contends that there was reasonable ground to doubt that the preparation and recording of the corrective deeds of trust violated the automatic stay. In fact, Suh continues to press his argument that § 546(b) gave the postpetition corrective deeds of trust priority over the estate's interest in the Jeongs' residence, so the recording of the corrective deeds fell within the exception to the automatic stay provided for in § 362(b)(3).

To address Suh's argument, we begin with the applicable statutes. Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." Section 362(b)(3) provides an exception to the automatic stay for "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title."

In turn, § 546(b) provides in relevant part:

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that–

---

[3](...continued)
contempt standards apply to both violations of the automatic stay and violations of the discharge injunction. *See Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1008 n.12 (9th Cir. 2006), *partially overruled on other grounds by Taggart*, 139 S. Ct. at 1802.

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

This generally means that, if under § 546(b) the bankruptcy trustee's status as a lien creditor or hypothetical bona fide purchaser as of the date of the petition filing would be subordinate under state law to a subsequent act of perfection, that same act of perfection is excepted from the automatic stay under § 362(b)(3). *See Treasurer of Snohomish Cty. v. Seattle First Nat'l Bank (In re Glasply Marine Indus., Inc.)*, 971 F.2d 391, 394 (9th Cir. 1992) (citing §§ 362(b)(3) and 546(b) and stating: "[i]f a creditor possesses a pre-petition interest in property . . . and state law establishes a time period for perfection of a lien based on that interest, the creditor may still perfect the lien post-petition."). As explained in one leading treatise, "Section 362(b)(3) . . . permits perfection, or maintenance or continuation of perfection, free of the automatic stay that would otherwise be applicable, under circumstances in which the creditor's action would be effective [under nonbankruptcy law] against a trustee." 3 Collier on Bankruptcy ¶ 362.05[4] (Richard Levin & Henry J. Sommer, eds., 16th ed. 2019).

Suh contends that, because Oh and Kwon received their original

deeds of trust in the Jeongs' residence prepetition, and because those deeds of trust were recorded prepetition with only minor defects in the property description, the recording of the corrective deeds of trust relates back to the time the original deeds of trust were recorded. This argument has no merit. The authorities he relies on concern the underlying validity of conveyances.[4] They have nothing to do with the perfection of secured interests in real property or with the priority of competing interests in real property. There is nothing in Suh's authorities even suggesting that, under California law, the holder of a deed of trust can record a corrective deed of trust and thereby obtain priority over intervening lien creditors and bona fide purchasers. As noted by the bankruptcy court, such argument is antithetical to the race notice nature of California's statutory priority scheme. *See Great W. Bank v. Snow (In re Snow)*, 201 B.R. 968, 974–75 (Bankr. C.D. Cal. 1996) (examining the contents and effect of California's race-notice recording statutes).

In short, nothing under California law gives holders of trust deeds any grace period or right to record corrective trust deeds for the purpose of

---

[4] In support of this point, Suh primarily relies on Cal. Code of Civil Proc. § 2077, which sets out rules for construing property descriptions in conveyances of real property. Suh also relies on *Hall v. Bartlett*, 158 Cal. 638, 642 (1910), which in relevant part dealt with the validity of a deed with a defective property description. The only other authority Suh cites is Cal. Gov. Code § 27201(c)(1), which provides that documents to be recorded for a second time must be executed and acknowledged or verified for a second time in order to be accepted for recording.

obtaining priority over an intervening lien creditor or bona fide purchaser. Therefore, §§ 362(b)(3) and 546(b) do not apply to the corrective deeds of trust Suh prepared and caused to be recorded on behalf of Oh and Kwon.

Furthermore, we agree with the bankruptcy court's determination that Suh's stay exception theory did not constitute a reasonable ground for Suh to doubt the applicability of the automatic stay to his actions. His inability to cite any *pertinent* authority in support of his theory is telling.

The automatic stay is a critical component of bankruptcy. It is liberally interpreted and strenuously enforced. *See RESS Fin. Corp. v. Beaumont 1600, LLC (In re The Preserve, LLC)*, BAP No. CC-17-1357-LLsTa, 2018 WL 4292023, at *8 (9th Cir. BAP Sept. 7, 2018) (citing *America's Servicing Co. v. Schwartz–Tallard (In re Schwartz–Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015) (en banc)). Against this backdrop, Suh had "no objectively reasonable basis for concluding that [his] conduct might be lawful." *Taggart*, 139 S. Ct. at 1799.  As the Supreme Court clarified in *Taggart*, "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id*. at 1802; *see also Freeman v. Nationstar Mortg. LLC (In re Freeman)*, 608 B.R. 228, 234 (9th Cir. BAP 2019).

At best, Suh's legal theory – unsupported by any authority – is wishful thinking that runs contrary to the express language of § 362(b)(3) and that would, if credited, dramatically undermine the relief afforded to

debtors and the estate under § 362(a)(4). At worst, his legal theory is nothing more than a disingenuous and cynical attempt to evade the clear mandate of the automatic stay. Either way, Suh lacked an objectively reasonable basis when he acted on behalf of Oh and Kwon to obtain from the Jeongs postpetition corrective deeds of trusts. Accordingly, the bankruptcy court did not abuse its discretion when it found Suh in contempt of court.

**B.    The Bankruptcy Court Did Not Abuse Its Discretion When It Imposed Sanctions Against Suh.**

Suh additionally challenges the award of $4,127.53 in compensatory civil contempt sanctions. As in the bankruptcy court, he argues that given his former clients' settlement payment of 60% of the trustee's fees incurred, he only could be held liable for 40% of Anderson's remaining fees. He further contends that his liability ended when his clients retained substitute counsel. Suh calculated the ceiling on his potential liability to be roughly $300.00 and concludes that it was error for the bankruptcy court to award sanctions in excess of this amount.

Attorney's fees are one component of an appropriate civil contempt award. *In re Dyer*, 322 F.3d at 1195; *In re The Preserve, LLC*, 2018 WL 4292023 at *11 (citing *In re H Granados Commc'ns, Inc.*, 503 B.R. at 734–35). Such fees may include fees incurred not only in remedying the stay violation but also in enforcing the stay against the contemnors. *In re H Granados Commc'ns*,

*Inc.*, 503 B.R. at 734–35. In other words, the "American Rule" does not apply in civil contempt proceedings under § 105(a). *Id.* at 735. The party seeking contempt sanctions may recover as compensatory damages all fees incurred in enforcing the automatic stay, including those incurred in pursuing damages resulting from the stay violation.

The  $4,127.53 in fees the bankruptcy court awarded were incurred in remedying Suh's stay violation. Suh does not argue otherwise. Instead, he maintains that he should not be held liable for a stay violation he could not fix. He cites *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002), for the proposition that a party should not be held in contempt to the extent he or she can demonstrate that they could not comply with the order they violated. *Id.*

But Suh's reliance on *Bennett* is misplaced. Suh conflates his alleged inability to *remedy* his stay violation with the violation of the stay itself. Put differently, he is liable for the damages caused by his stay violation - his postpetition efforts on behalf of Oh and Kwon to obtain and have the Jeongs record new deeds of trust. Suh unequivocally had the ability to comply with the stay by not seeking the recording of corrective deeds of trust on behalf of Oh and Kwon. Indeed, Suh's actions are the very definition of acts to perfect a lien stayed by § 362(a)(4), and they clearly violated the automatic stay.

Once Suh willfully violated the stay, he potentially was liable for all

16

harm Anderson suffered as a result of the stay violation. *See In re H Granados Commc'ns, Inc.*, 503 B.R. at 735. To hold otherwise would undermine the compensatory nature of this civil contempt award. *See generally In re Dyer*, 322 F.3d at 1192 (describing difference between compensatory civil contempt sanctions and non-compensatory criminal contempt fines). Suh's inability to remedy his willful stay violation did not negate the violation itself, nor did it terminate his liability for any resulting damages.

In short, the bankruptcy court did not abuse its discretion when it imposed against Suh $4,127.53 in compensatory civil contempt sanctions for the balance of the trustee's unpaid legal fees incurred to address the stay violation.

## C.     Anderson Is Entitled To Recover The Attorney's Fees And Costs He Has Incurred In Defending This Appeal.

Anderson has requested that we award him additional fees and costs incurred to defend against this appeal. He offers two discrete theories for his entitlement to recover his fees on appeal. First, he claims that the award is necessary to compensate him for the continuing harm arising from Suh's original stay violation and to prevent Suh from diminishing the value of the bankruptcy court's prior compensatory civil contempt sanctions award. Second, Anderson contends that this appeal is frivolous, so he is entitled to recover his attorney's fees and costs on appeal under Rule 8020.

17

In support of his first theory, Anderson relies on *Schwartz–Tallard*, 803 F.3d at 1101, which addressed the right to recover attorney's fees on appeal for a violation of the automatic stay. Construing § 362(k), which provides for recovery of attorney's fees, the Ninth Circuit held in relevant part:

> [w]hen a party is entitled to an award of attorney's fees in the court of first instance, as Schwartz–Tallard was here, she is ordinarily entitled to recover fees incurred in successfully defending the judgment on appeal. . . . We see no reason why fee awards under § 362(k) should be subject to a different rule.

*Id.* (citing *Legal Voice v. Stormans, Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014)).

A chapter 7 trustee, however, is not entitled to seek recovery under § 362(k). Instead, the trustee only can recover damages for stay violations under the bankruptcy court's civil contempt power. *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995). And the Ninth Circuit has held that the bankruptcy court's civil contempt power does not include the power to award fees incurred in defending the bankruptcy court's contempt ruling on appeal. *See State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1153-54 (9th Cir. 1996); *see also Ocwen Loan Servicing v. Marino (In re Marino)*, 949 F.3d 483, 489 (9th Cir. 2020).

Even so, we are persuaded that Anderson's alternate request based on Rule 8020 has merit. Rule 8020(a) conforms with Federal Rule of Appellate Procedure 38 and permits the district court or the BAP to award damages and double costs for frivolous bankruptcy appeals, including the

appellee's appellate attorney's fees and expenses. *See De Jesus Gomez v. Stadtmueller (In re De Jesus Gomez)*, 592 B.R. 698, 708 (9th Cir. BAP 2018). "'An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit.'" *In re Marino*, 949 F.3d at 489 (quoting *Maisano v. United States*, 908 F.2d 408, 411 (9th Cir. 1990)).

Suh's arguments meet the frivolous appeal standard. As we noted earlier in this decision, he has not cited any pertinent authority to support his interpretations of the automatic stay and California law. Furthermore, both bankruptcy law and California law unequivocally support the bankruptcy court's rulings. Suh's arguments on appeal are no different than those he raised before the bankruptcy court. Yet he still has not provided any authority supporting his legal theory, which contravenes the clear mandate of § 362(a)(4). This stay provision plainly enjoined his postpetition efforts to perfect liens against property of the estate.

Because we find that the result of Suh's appeal was obvious and that his arguments are wholly without merit, Anderson is entitled to his attorney's fees and double costs under Rule 8020. *In re De Jesus Gomez*, 592 B.R. at 709. Within twenty-one days of the date of this decision, Anderson should file and serve a declaration attesting to his reasonable and necessary fees and costs on appeal. Appropriate documentation should accompany the declaration, including detailed billing records supporting the amount of Anderson's appellate fees and costs. Within fourteen days of service of

this declaration on Suh, Suh may respond to the declaration and may address in his response whether the fees incurred were necessary and whether the amount of fees sought is excessive or reasonable. This Panel thereafter will determine the appropriate amount of fees and costs to award and will issue a separate order disposing of the Rule 8020 motion.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order holding Suh in contempt of court and awarding Anderson $4,127.53 in compensatory civil contempt sanctions. We further conclude that Anderson is entitled to recover his fees and double costs on appeal.