NOT FOR PUBLICATION

**FILED**

FEB 4 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>WILLIE N. MOON and ADNETTE M. GUNNELS-MOON,<br>　　　　　Debtors. | BAP No. NV-20-1200-BFL<br><br>Bk. No. 13-12466-MKN |
| WILLIE N. MOON; ADNETTE M. GUNNELS-MOON,<br>　　　　　Appellants,<br>v.<br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br>　　　　　Appellee. | **MEMORANDUM[1]** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Mike K. Nakagawa, Bankruptcy Judge, Presiding

Before: BRAND, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellants Willie N. Moon and Adnette M. Gunnels-Moon[2] appeal an

order denying their motion for contempt against Rushmore Loan

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[2] We refer to Mr. and Mrs. Moon individually as Willie and Adnette for

Management Services, LLC ("Rushmore") for violating their chapter 13[3] plan confirmation order. The Moons alleged that Rushmore violated the confirmation order by failing to release its junior lien against their home as their chapter 13 plan required. Because the confirmation order was void as to Rushmore for lack of notice, Rushmore could not be held in contempt of it. Therefore, we AFFIRM.

## FACTS

**A.    Previous events and appeals**

The Moons filed their chapter 13 bankruptcy case on March 26, 2013. At the time, their home ("Residence") was subject to two liens. Rushmore held the second lien, which appeared to be entirely underwater.

Thereafter, the Moons moved to value the Residence under § 506(a) to strip off Rushmore's entirely unsecured lien. Rushmore did not respond. On December 5, 2013, the bankruptcy court entered an order granting the valuation motion ("Lien Avoidance Order"). The Lien Avoidance Order provided that Rushmore's claim was reclassified from a secured claim to an unsecured claim, and that its second deed of trust would be avoided upon the Moons' successful completion of their chapter 13 plan.

---

convenience and intend no disrespect.

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

On April 7, 2014, the bankruptcy court entered an order confirming the Moons' amended chapter 13 plan ("Confirmation Order"). Section 5.06 of the plan provided that a holder

> of a claim shall retain its lien until the earlier of (a) the payment of the underlying debt determined under non-bankruptcy law or (b) discharge under Section § [sic] 1328 . . . After either one of the foregoing events has occurred, creditor shall release its lien and provide evidence and/or documentation of such release within 30 days to Debtor(s).

On September 28, 2016, the bankruptcy court entered an order of discharge for the Moons, discharging their prepetition unsecured debt including the debt owed to Rushmore. A final decree closing the case was entered on October 3, 2016. The Moons' former bankruptcy attorney recorded the Lien Avoidance Order with the Clark County Recorder in February 2017.

As it turns out, no documents filed during the Moons' chapter 13 case — the bankruptcy notice, any motions, applications, notices of hearings, court orders or other papers — were served on Rushmore due to an address error. The address error stemmed from a mistake made in the creditor matrix when the case was filed and continued throughout the case.

After reopening their bankruptcy case, the Moons filed a motion seeking to hold Rushmore in contempt for violating the automatic stay and the discharge injunction ("First Contempt Motion"). The Moons alleged that, between November 2013 and October 2018, Rushmore sought to collect the debt through numerous monthly mortgage statements and other collection letters and hundreds of telephone calls to the Residence.

After an evidentiary hearing, the bankruptcy court entered an Order and Memorandum Decision on February 25, 2020, granting the First Contempt Motion and awarding the Moons $100,742.10 in compensatory damages (including $100,000 to Willie for his emotional distress), and $200,000 in punitive damages for Rushmore's willful violation of the automatic stay under § 362(k)(1)[4] ("First Contempt Order"). *In re Moon*, 613 B.R. 317, 361 (Bankr. D. Nev. 2020). Despite the lack of service of any documents on Rushmore during the Moons' bankruptcy case, the court found that Rushmore received actual notice of the bankruptcy on December 20, 2014, when Willie told a Rushmore representative in a phone call to the Residence that he and Adnette were "in a chapter 13." The court found Rushmore liable to the Moons for stay violation damages incurred between December 20, 2014, and the discharge date of September 28, 2016. The court declined to award any damages for Rushmore's violation of the discharge injunction because the Moons had not established when Rushmore became aware of the discharge order.

On appeal to the BAP, the Panel reversed the bankruptcy court's $100,000 damage award to Willie for lack of standing, and vacated and remanded the $200,000 punitive damages award for further consideration by the bankruptcy court in light of the significantly reduced compensatory award. The Panel affirmed the bankruptcy court's decision with respect to the

---

[4] Section 362(k)(1) provides, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

4

discharge injunction. *See Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, BAP Nos. NV-20-1057-BGTa & NV-20-1070-BGTa, 2021 WL 62629 (9th Cir. BAP Jan. 7, 2021).

Meanwhile, the Moons sought all of the attorney's fees and costs they incurred for the First Contempt Motion under § 362(k)(1), which Rushmore opposed. After a hearing, the bankruptcy court granted the Moons' request and awarded them $67,007.94. On appeal, the Panel vacated and remanded the fee award for further findings and consideration by the bankruptcy court. *See Rushmore Loan Mgmt. Servs., LLC v. Moon (In re Moon)*, BAP Nos. NV-20-1144-BTaF & NV-20-1155-BTaF, 2021 WL 62630 (9th Cir. BAP Jan. 7, 2021).

**B.      Moons file their second contempt motion against Rushmore.**

About two weeks after the bankruptcy court entered the First Contempt Order, the Moons filed a second motion for contempt, this time alleging that Rushmore violated the Confirmation Order by failing to release its lien against the Residence, which the Moons claimed was interfering with their ability to refinance the loan ("Second Contempt Motion").[5] The Moons maintained that Rushmore was required to release the lien either within 30 days from when the Confirmation Order was entered on April 7, 2014, or within 30 days from when Rushmore claimed it got notice of the Moons' bankruptcy and appeared in the case on February 8, 2019. Either way,

---

[5] The Moons also asked the bankruptcy court to confirm under Rule 5009(d) that Rushmore's lien was avoided. Rushmore consented to entry of such an order at a hearing on April 15, 2020. The bankruptcy court entered the Rule 5009(d) order on April 30, 2020, stating that Rushmore's claim secured by the second deed of trust had been satisfied.

Rushmore had not done so. The Moons also contended that Rushmore's failure to release its lien was a continuing violation of the automatic stay.

The Moons argued that Rushmore should be held in contempt for violating the Confirmation Order under the court's inherent authority, § 105(a), or § 362(k)(1), and that they should be awarded damages and attorney's fees. Neither Willie nor Adnette submitted a declaration testifying as to their damages. However, as part of their prayer request, the Moons asked the court to award "actual damages and costs in an amount to be determined in a hearing," and asked that a separate hearing be held on "sanctions, actual damages, emotional distress damages, punitive damages, and attorney's fees."

Rushmore opposed the Motion, contending that it was never the beneficiary of the second deed of trust, and so the second lien against the Residence was never "its" lien to release.[6] However, argued Rushmore, even if it ever had a beneficial interest in the second deed of trust, that interest was transferred to another party in October 2018, approximately eighteen months before the Moons filed the Second Contempt Motion. Thus, contended Rushmore, it had no ability to release it. In addition, argued Rushmore, the Moons had not established that Rushmore caused them any damages by a failure to release the lien, including damages from any alleged inability to

---

[6] Notably, Rushmore made the opposite argument in an adversary proceeding it filed against the Moons. In that proceeding, Rushmore argued that its second deed of trust was a constitutionally protected property right, and that entry of the Lien Avoidance Order and Confirmation Order without notice violated its due process rights.

refinance the loan. Rushmore pointed out that the Moons' former bankruptcy attorney recorded the Lien Avoidance Order three years prior in February 2017.

In reply, the Moons disputed the contention that the second lien was not Rushmore's. Rushmore's own policies and procedures indicated that it was, and Rushmore never contested its interest in the lien at the evidentiary hearing on the First Contempt Motion. The Moons further disputed the contention that Rushmore no longer had any ability to release the lien because of its transfer to another party in October 2018. The Moons contended that Rushmore could reacquire the loan to release the lien, or it could ask the transferee to release it or pay the transferee to do so. Lastly, the Moons argued that Rushmore's failure to release its lien had caused them damages including emotional distress to Adnette, when she learned that the lien was preventing a refinance of the loan. The Moons asserted that the court could "hear this motion and rule on the facts and evidence it already ha[d]," or it "[could] have another evidentiary hearing limited to these issues."

After a hearing, the bankruptcy court entered an order denying the Second Contempt Motion. The court found that, because the Moons had not established that Rushmore was given notice of the Confirmation Order prior to the service of the First Contempt Motion on January 18, 2019, any compensation, if available, was limited to damages occurring after that date. Ultimately, the court found that the Moons had failed to meet their burden of proving that Rushmore's violation of the Confirmation Order with its alleged

7

failure to release its lien caused them any nonpecuniary or pecuniary damages. The court further found that Rushmore's failure to release its lien was not a "continuing" violation of the automatic stay, and even if damages occurring after the stay expired could be awarded, the Moons had failed to establish any. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in not holding Rushmore in contempt of the Confirmation Order?

## STANDARDS OF REVIEW

We review de novo whether a litigant's due process rights were violated. *DeLuca v. Seare (In re Seare)*, 515 B.R. 599, 615 (9th Cir. BAP 2014).

We review for an abuse of discretion the bankruptcy court's decision whether to hold a party in civil contempt. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Rediger Inv. Corp. v. H. Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 731 (9th Cir. BAP 2013). The underlying factual findings are reviewed for clear error. *In re Dyer*, 322 F.3d at 1191; *In re H Granados Commc'ns, Inc.*, 503 B.R. at 731-32.

The bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are clearly erroneous. *Olomi v. Tukhi (In re*

*Tukhi)*, 568 B.R. 107, 112-13 (9th Cir. BAP 2017) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.20 (9th Cir. 2009) (en banc)).

We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

The Moons argue that the bankruptcy court erred in determining that they failed to establish any damages from Rushmore's failure to release the second deed of trust, and that the court further erred in determining that Rushmore's failure to release the second deed of trust was not a continuing stay violation. While we affirm the bankruptcy court's ruling, we do so on legal grounds not articulated by the court or the parties.

Failure to comply with an injunction may subject the nonconforming party to civil contempt. *Gunn v. Univ. Comm. To End War in Viet Nam*, 399 U.S. 383, 389 (1970). A party who knowingly violates a bankruptcy injunction is subject to contempt proceedings under § 105(a). *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). The moving party must show by clear and convincing evidence that the contemnors intentionally violated a specific and definite order of the court. *In re Dyer*, 322 F.3d at 1191.

However, "[a] party cannot be held in contempt for failure to comply with a court order if that order is not enforceable against it." *Humphries v. EMC Mortg. Corp. (In re Mack)*, BAP Nos. CC-06-1123-MoDK & CC-06-1242-

MoDK, 2007 WL 7545163, at \*4 (9th Cir. BAP Mar. 28, 2007). "'The validity of a contempt adjudication is based on the legitimacy of the underlying order.'" *Id.* (quoting *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) (reversing entry of contempt because underlying order was entered in error)). "A judgment may be void or unenforceable against a party if it was entered or obtained 'in a manner inconsistent with due process of law.'" *Id.* (quoting *Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985)). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). And "[i]f the notice requirement of the due process clause is not satisfied, the order is void." *Citicorp. Mortg., Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 203 (9th Cir. BAP 1995) (string citation omitted); *accord In re Ctr. Wholesale, Inc.*, 759 F.2d at 1448; *In re Mack*, 2007 WL 7545163, at \*4; *GMAC Mortg. Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 661 (9th Cir. BAP 1999).

The Lien Avoidance Order and the Confirmation Order attempted to modify the property rights of Rushmore – a known creditor of Adnette. It is undisputed that the Moons did not serve Rushmore with the amended chapter 13 plan, the notice of plan confirmation hearing, or, what is most important here, the Confirmation Order. Hence, it is undisputed that the Moons did not comply with the requirements for providing notice. *See* Rules

2002(b) & 3015(d). The Panel in *Mack* noted the heightened concerns for constitutional due process when a plan proponent is attempting to modify or eliminate the property rights of a known creditor:

> A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the (chapter 11) reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests.

2007 WL 7545163, at *5 (quoting *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 622 (10th Cir. 1984) (creditor with actual knowledge of bankruptcy case did not receive adequate notice of confirmation hearing; consequently, confirmed plan was not binding on creditor)). According to the bankruptcy court's finding, which we do not find to be illogical, implausible, or without support in the record, Rushmore received notice of the Confirmation Order no sooner than January 18, 2019 – nearly five years after it had been entered.

The Moons failed to provide reasonable notice to Rushmore to apprise it of the plan and the confirmation process and afford it an opportunity to present its objections regarding the treatment of its property interest. This constitutes a denial of due process to Rushmore. As a result, Rushmore was not bound by the terms of the Confirmation Order and its directive to release the second deed of trust within 30 days after entry of the discharge order. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (when a creditor is provided with no notice of the modified plan prior to the confirmation hearing, the creditor has been deprived of due process of law

and its terms cannot bind that creditor); *Levin v. Maya Constr. Co. (In re Maya Constr. Co.)*, 78 F.3d 1395 (9th Cir. 1996) (creditor whose claim was known to debtor but who was not served with notice of the time fixed for filing objections to the plan, confirmation hearing, and other relevant notices was not bound by the confirmed plan); *Miranda v. Bank of Am. Nat'l Ass'n (In re Miranda)*, BAP No. CC-19-1206-LGS, 2020 WL 2299959, at \*6 (9th Cir. BAP May 7, 2020) (if creditor does not receive notice sufficient to satisfy due process, it is not bound by the plan terms); *In re Mack*, 2007 WL 7545163, at \*7 (same); *In re Richter*, 525 B.R. 735, 750-51 (Bankr. C.D. Cal. 2015) (confirmed plan does not have preclusive effect on a party who did not receive notice sufficient to satisfy its due process rights) (citing *Ellett v. Stanislaus*, 506 F.3d 774, 777 (9th Cir. 2007)). Consequently, Rushmore could not be held in contempt for violating the Confirmation Order, an order that was not enforceable against it. *Kirkland*, 343 F.3d at 1142-43; *In re Mack*, 2007 WL 7545163, at \*6-7 (because mortgage lien creditor did not receive notice of the plan, the plan confirmation hearing or the confirmation order, its successor in interest could not be held in contempt for violating the confirmation order for failing to accept the replacement note and deed of trust as purported in the disclosure statement and plan).[7]

---

[7] As the bankruptcy court noted in its order denying the Second Contempt Motion, notice of a confirmation order is different from notice of the automatic stay or notice of the discharge. As a matter of law, the automatic stay arises immediately whenever a chapter 13 bankruptcy petition is filed (except for repeat filers under § 362(c)(4)), and the discharge injunction arises immediately when a chapter 13 discharge is entered. In contrast, a plan confirmation order is not entered in every chapter 13 case, and multiple confirmation

We also reject the Moons' argument that the bankruptcy court erred in determining that Rushmore's failure to release the second deed of trust was not a continuing stay violation. The Moons fail to cite a single case where a lien creditor's postpetition failure to release a lawfully-recorded prepetition lien constitutes an automatic stay violation, much less a continuing one. Further, the automatic stay had expired by the time Rushmore was supposedly required to release its lien – i.e., within 30 days **after** entry of the discharge order on September 28, 2016. § 362(c)(2)(C) (stay expires upon entry of the discharge). Therefore, if there was no stay violation or continuing stay violation by Rushmore, there can be no damages to the Moons under § 362(k)(1). In addition, given the transfer of the second deed of trust to another party in October 2018, Rushmore had no ability to release it at the time the Moons filed the Second Contempt Motion.[8]

## CONCLUSION

For the reasons stated above, we AFFIRM.

---

orders can be entered as a result of multiple modified chapter 13 plans. Thus, to find a party in contempt for violating a specific plan confirmation order, there must be certainty that notice of the specific court order was given.

[8] Given our decision, we need not consider the Moons' argument that the bankruptcy court abused its discretion by failing to conduct an evidentiary hearing on damages. Even if we did consider it, the argument is not well-taken. The Moons conceded that the bankruptcy court could decide the Second Contempt Motion on the record it already had before it.